### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **LAURIE L. TARDIFF,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Docket No. 07-10-P-H** |
| | ) | |
| **COUNTY OF KNOX, et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

### AMENDED MEMORANDUM DECISION ON DEFENDANTS' MOTION TO COMPEL[1]

The defendants have moved to compel three individuals to answer certain questions posed to them (or to be posed to them) at deposition.  I grant the motion in part.

The history of this case is familiar and I will not recite it here.  For present purposes, it suffices to say that the plaintiff in this action formerly served as the class representative in an action against Knox County and its sheriff which began on November 19, 2002 and ended with Judge Carter's approval of a class settlement on April 24, 2007.  *Tardiff v. Knox County, et al.*, Docket No. 02-251-P-C (Docket Nos. 1 & 400).  In the interim, Tardiff withdrew as class representative, *id*. Docket Nos. 356 & 367, and opted out of the settlement, Defendants' Answer to Plaintiff's Complaint and Counterclaim ("Answer and Counterclaim") (Docket No. 7) ¶ 26; Plaintiff Laurie L. Tardiff's Answer to Counterclaim (Docket No. 10) ¶ 26 .  She then brought this action, in which Knox County has raised defenses and counterclaims based, *inter alia*, on her alleged approval of the settlement agreement, including breach of contract, estoppel and waiver.  Answer and Counterclaim at 1-2, 10-12.

---

[1] The amendment correctly identifies Judge Carter as the judge of this court who approved the class settlement.

1

The motion to compel concerns the defendants' depositions of the plaintiff and two of the attorneys who represented the plaintiffs in the class action, Robert Stolt and Sumner Lipman. Defendant's [sic] Motion to Compel Testimony of Plaintiff, Robert Stolt, Esq., and Sumner Lipman, Esq. ("Motion") (Docket No. 39).   The motion asked this court to compel these individuals to "answer[] questions relating to" 17 listed "areas in inquiry[.]"  *Id*. at 21-22.  In response, the plaintiff pointed out, Plaintiff's Response and Objection to Motion to Compel ("Opposition") (Docket No. 51) at 1, that this court's Local Rule 26(b) requires a party seeking an order to compel answers to questions to quote in full each question and the response or objection stated by the opposing party, Local Rule 26(b), which the defendants' initial submission did not do.  The defendants contended that their motion complied with Local Rule 26(b) and asserted that, due to the large number of deposition questions involved, "quoting each deposition question and response was simply impractical and unnecessary."  Defendant's [sic] Reply to Plaintiff's Response and Objection to Motion to Compel (Docket No. 53) at 2. I ordered the defendants to comply with the literal requirements of Local Rule 26(b) by submitting a list of the actual deposition questions and responses at issue.  Docket No. 54. The defendants filed that list (Docket No. 56) and the plaintiffs have now responded to it.

Indicating to counsel only the general "areas in inquiry" in which deposition witnesses are to answer questions simply provides another opportunity for dispute between or among them.  The local rule requiring the party seeking the court's assistance in obtaining answers to deposition questions to identify each such question separately avoids the almost certain eventuality that otherwise counsel would come back to the court, asking it to clarify the way in which each such "area in inquiry" applies to specific questions.  For a similar reason, this court will not order a deponent to answer questions in an "area in inquiry" before he has been deposed, as is the case with Lipman here. Unless and until Lipman has been asked specific questions and directed not to answer those questions, this court will

not "compel" him to answer anything.  The motion as to Lipman is denied. My rulings as to specific questions posed to Stolt during his deposition should serve as a guide to counsel for Lipman's deposition as well.

The defendants' supplemental filing lists 43 questions and responses from the Stolt deposition and 22 questions and responses from the plaintiff's deposition.  Defendants' Supplementation to Motion to Compel (Docket No. 56).   In her response to the defendants' supplemental filing, the plaintiff "withdraws several of her objections," Plaintiff's Response to Defendants' Supplementation to Their Motion to Compel ("Supplemental Response") (Docket No. 65) at 1, specifically to listed questions numbered 5 and 6 posed to Stolt, *id*. at 8, and questions numbered 8 and 9 to the plaintiff, *id*. at 29-30.  The motion to compel accordingly is granted as to those questions.

## I.  Stolt Deposition

Some of the objections and directions not to answer interposed by counsel for the plaintiff during this deposition require me to revisit my earlier decision on the plaintiff's motion to quash subpoenas for documents served on Stolt and Lipman by counsel for the plaintiff.  *See* Memorandum Decision and Order on Motion to Quash ("Memorandum Decision") (Docket No. 24).   In resolving that dispute, I found that the plaintiff had waived the attorney-client privilege as to documents she submitted to the court in the class-action case and all related exchanges.  *Id*. at 4.  To the extent that her lawyer in the present action invoked the attorney-client privilege in directing Stolt not to answer a particular question, I will review that question in light of its relationship to the documents submitted to the court by the plaintiff in connection with the earlier case.  My discussion of the work-product doctrine in the memorandum dealt only with documents, *see id*. at 5-6, so I will have to deal with the subject anew to the extent that it is the asserted basis for any objections or directions that the witness not answer a particular question.  The best way in which to make my rulings on each of the disputed

questions sufficiently clear so as to provide guidance for the parties with respect to the Lipman

deposition is to repeat each question and objection here before setting out my ruling.[2]

## Question 1

> Q:      So you'd agree with me that as of at least October 11, 2006, you
> were telling Judge Carter that you did not believe that Laurie Tardiff could
> remain as the class representative?
>
> A:      That was my answer to him, yes.
>
> Q:      And why did you feel that way?
>
> [Plaintiff's Counsel, hereafter "PC"]:  Objection, instruct you not to answer,
> work product, mental impressions.

[Transcript of Deposition of] Robert Stolt, Esq. ("Stolt Deposition") (Docket No. 44) at 17.  "The

attorney-work-product privilege . . . protects from disclosure materials prepared by attorneys in

anticipation of litigation."  *State of Maine v. United States Dep't of Interior*, 298 F.3d 60, 66 (1st

Cir. 2002) (citation and internal quotation marks omitted).  The First Circuit observed in 1988 that

> [t]he draftsmen of Fed. R. Civ. P. 26(b)(3) . . . recognized a distinction
> between types of work product: even where the need/hardship hurdle has
> been cleared, the court must continue to afford protection against disclosure
> of the mental impressions, conclusions, opinions or legal theories of an
> attorney[.]

*In re San Juan DuPont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014 (1st Cir. 1988) (citation and

internal punctuation omitted).  The First Circuit, however, "merely note[d] — but [did] not address —

this distinction."  *Id*. at 1015.  The defendants contend that the privilege must yield because the

opinions of Stolt at the relevant time are "directly at issue in this case" and because their need for that

information is compelling.  Motion at 12.  They base this contention on their affirmative defenses,

which, they assert, "depend on Defendant [sic] being able to prove that Plaintiff represented or

---

[2] Except as otherwise specifically noted, I recite hereinbelow the questions and objections as they have been reproduced by the
defendants in their supplementation.

concealed by conduct or word her present intent not to opt out of the Settlement Agreement signed on September 29, 2006." *Id*. at 14.  They argue that their counterclaim and three of their affirmative defenses require them to prove "what Plaintiff and Plaintiff's attorneys believed the terms of the Settlement Agreement were when it was signed[.]"  *Id*. at 15.  They contend that they have no other means of discovering (i) when the plaintiff and her attorneys became aware that her individual claims differed from those of the class,  (ii) whether her claims appeared typical of those of the class throughout the class litigation, (iii) what led the plaintiff and her attorneys to conclude that she was no longer fit to be class representative, (iv) when and how the plaintiff and her attorneys realized that her damages amounted to $500,000 or more, (v) what the plaintiff and her attorneys believed her duties to the class to be, (vi) whether the plaintiff and her attorneys believed the settlement agreement to be in her best interest and that of the class, (vii) what the plaintiff and her attorneys believed the value of the typical class member's claim to be, (ix) whether the plaintiff and her attorneys intended that she accept a payout from the settlement fund when she signed the settlement agreement, (x) whether they intended to settle her individual claims by her signature on the settlement agreement, (xi) whether the plaintiff received a complete explanation of the settlement agreement before signing it, and (xii) whether the plaintiff and her attorneys believed that she understood all of the terms of the settlement agreement before she signed it.  *Id*. at 15-16.  They cite *Holmgren v. State Farm Mut. Auto. Ins. Co*., 1992 U.S.App.LEXIS 29008 (9th Cir. Nov. 9, 1992), as persuasive authority for their position.  *Id*. at 13, 17.

The plaintiff responds that attorney opinion work-product is "unconditionally protected[.]" Supplemental Response at 4.  While she acknowledges that neither the Supreme Court nor the First Circuit has expressly so held, *id*., she argues that "[t]here is strong authority supporting unconditional

nondisclosure of intangible work product." *Id*. However, in support of this assertion she cites only

*Hickman v. Taylor*, 329 U.S. 495 (1947), in which the Supreme Court noted in *dicta*:

> This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways — aptly though roughly termed by the Circuit Court of Appeals in this case . . . as the "Work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.

329 U.S. at 511 (citation omitted).[3] This is not "strong authority" for "unconditional nondisclosure" of

an attorney's mental impressions. And in this case, the defendants have not presented a "mere

demand" for this information; they contend that the information is at the heart of their defenses,

defenses that were surely foreseeable to the plaintiff when she brought this action.

In circumstances in which an affirmative defense places an attorney's mental impressions at

issue, the courts have not hesitated to make those impressions discoverable. *See, e.g., Dri Mark

Prods., Inc. v. Wilpak Indus., Inc.*, 2006 WL 2882565 (E.D.N.Y. Oct. 6, 2006), at *8-*9 (attorney

malpractice claim in patent case); *Rutgard v. Haynes*, 185 F.R.D. 596, 601 (S.D.Cal. 1999)

(affirmative defense in attorney malpractice case); *Environ Prods., Inc. v. Total Containment, Inc.*,

1996 WL 494132 (E.D.Pa. Aug. 22, 1996), at *4 (affirmative defense of inequitable conduct in patent

infringement action). While I do not agree that all twelve areas of inquiry specified by the defendants

in this case are relevant to the affirmative defenses which the defendants have pleaded, in those

instances where the defendants do not already have documentary evidence on point and the information

sought is relevant and within the exclusive control of the plaintiff through her prior counsel, the need

for production of the information is compelling. That is the applicable legal standard for this issue.

---

[3] *See also Holmgren,* 1992 U.S.App.LEXIS 29008, at *6-*7 (Supreme Court in 1946 rejected proposed amendment to Fed. R. Civ. P. 30 that would have given opinion work product absolute protection).

*Environ Products*, 1996 WL 494132 at *4; *Holmgren*, 1992 U.S.App.LEXIS 29008 at *8-*9.  In this particular instance, Stolt must answer the question that plaintiff's attorney directed him not to answer.

## Question 2

Q:  Did you feel as of October 11, 2006, Ms. Tardiff's interests diverged from the interests of the absent class members?

[PC]:  Same objection.

The plaintiff asserts that the basis for her objection to this question is the same as her basis for the objection to Question 1.  Supplemental Response at 7.  This question does not at first glance appear to differ much from Question 1 — and it may indeed present some part of Stolt's answer to Question 1 — but in the absence of any indication that Stolt conveyed such a feeling to the plaintiff or to Judge Carter, I do not see its relevance to the defendants' affirmative defenses and counterclaim.  I will not order Stolt to answer this question.

## Question 3

Q:  Is it correct that as soon as you, as counsel, perceived that Ms. Tardiff could no longer act as class representative, you notified the court of that?

[PC]:  Objection to the form of the question and also object on the basis of work product, instruct the witness not to answer, asking about his perceptions and when they occurred.

I do not see any indication that the plaintiff continues to rely on the objection to the form of this question as a basis for instructing Stolt not to answer it.  An instruction not to answer on such a basis would be improper.  Fed. R. Civ. P. 30(d)(1).  Because any notification to the court that class counsel believed that the plaintiff could no longer act as class representative would have gone to the plaintiff as well, this question seeks relevant information and  must be answered for the reasons already discussed.

## Question 4

Q:          As counsel, you understood that you represented Ms. Tardiff individually, is that correct, in the class action?

[PC]:       Objection, calls for work product testimony, instruct him not to answer.

The understanding of class counsel on this point, in the absence of any indication that it was conveyed to the plaintiff at that time, is not relevant to any of the affirmative defenses or counterclaims asserted by the defendants. Because the work-product privilege for mental impressions may be overcome only by a showing of both relevance and compelling need, I will not order Stolt to answer this question.

## Questions 5 – 11

Q[5]:          Did you, yourself, and did your law firm represent Ms. Tardiff individually in the class action?
[PC]:       I guess I'd object to that and I instruct him not to answer. That's work product. It calls for legal analysis, mental impressions.

Q[6]:       Did you represent her individually from the time that the class was certified forward?
[PC]:       I'm going to object to that question as attorney work product.

Q[7]:       Did you believe during your representation of the class that you and your law firm could represent Laurie Tardiff as a representative of the class as certified without also representing her individual interests?
[PC]:       Objection, instruct you not to answer, mental impressions, work product.

Q[8]:       I'm going to show you what I have marked as Exhibit 3. That is a copy of Rule 3.4(c), of the Rules of Professional Responsibility, and I am referring specifically to Rule 3.4(c)(2)(i) dealing with simultaneous representation in the same matter or substantially related matters and my question to you is do you believe that under the Rules of Professional Responsibility you and your law firm were simultaneously representing Ms. Tardiff individually and the class of absent members as certified by the court?
[PC]:       Objection, instruct you not to answer, attorney work product, mental impressions, legal conclusions, legal research, and relevance to any claim or defense in this matter.

Q[9]:      I'll show you a copy what I've marked as Exhibit 4.  This is a copy of a portion of the Federal Rules of Civil Procedure Rule 23.  I'm referring initially to Rule 23(a)(3) and (4), which reads in pertinent part, one or more members of a class may sue or be sued as representatives — strike that, please.  I'm going to start that again.  One or more members of a class may sue or be sued as representative parties on behalf of all only if (3) the claims of the representative parties are typical of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  My question is what do you understand the requirement that the claims of the representative be typical of the claims of the class to mean?
[PC]:      Objection, instruct the witness not to answer, attorney work product and relevant [sic] to any claim or defense in this case.

Q[10]:     If you would look at Exhibit 4 on page 2 down in the lower right-hand corner of that page, (g)(1)(B) says an attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class.  In seeking appointment as class counsel, did you, yourself, and did your firm — strike that, please.  What did you, yourself, and what did your firm understand the requirement that class counsel be able to fairly and adequately represent the interests of the class to mean?
[PC]:      Objection, instruct the witness not to answer, attorney work product and irrelevant to any claims or defenses in this case.

Q[11]:     And I think I asked this question but just to be sure, if I were to ask Attorney Stolt what his understanding is of the requirement of [R]ule 23(g) that an attorney appointed to serve as class representative [sic] be able to fairly and adequately represent the interests of the class, you would instruct him not to answer?
[PC]:      On both grounds of work product and relevant [sic] to any claim or defense in the case.

The plaintiff has withdrawn her objections to Questions 5 and 6.  None of the remaining questions in this group is distinguishable for present purposes from Question 4, and my ruling on that question applies to each of these.

## Question 12

Q:      Did you understand or believe that  there was a factual basis that Ms. Tardiff's strip search was typical of strip searches that you understood were conducted on other absent class members?

[PC]:      Instruct you not to answer on the basis of work product and relevance to any claim or defense.

Again, in the absence of any indication that Stolt conveyed his understanding or belief on this point to the plaintiff or to the court, the information sought is not relevant to the defendants' affirmative defenses and counterclaim.

### Question 13

> Q:      In arguing to the court that Ms. Tardiff's claims were typical of the claims of the class, did you believe that you had a factual basis on which to contend that Ms. Tardiff's claim for damages was typical of the claims for damages of absent class members?
>
> [PC]:      Same objection and instruction.

This question immediately followed Question 12 in the Stolt deposition, so the "same objection and instruction" is that made to Question 12.  I order Stolt to answer this question because it seeks information about a representation made to the court and because it is specific to the plaintiff's claim for damages, as to which there is already documentary evidence in this case suggesting that the plaintiff's evaluation of her claim for damages was quite different from the claims made on behalf of the class as a whole and the point at which the plaintiff held that belief is central to one or more of the defendants' affirmative defenses and counterclaims.

### Question 14

> Q:      I'm going to show you two exhibits at the same time.  Exhibit 6 is the Complaint and Demand for Jury Trial that appears to have been signed on the 18th and 19th of November of 2002 and Exhibit 7 is the First Amended Complaint and Demand for Jury Trial that appears to have been signed on December 21 and 24 of 2002.  I'll direct your attention to paragraphs 12 through 30 of each of these documents, and I think you'll agree that they're the same in each document, and my question is did you intend in pleading paragraphs 12 through 30 of the Complaint and First Amended Complaint to plead facts with sufficient specificity to show that Ms. Tardiff's claim was typical of claims of the absent class members?
>
> [PC]:      Same instruction and objection.

Again, this question and response appear to follow Question 13 directly, so the "same instruction and objection" is that posed to Question 12.  This question has no relevance to the defendants' affirmative defenses and counterclaims, and accordingly I will not order Stolt to answer it.

### Question 15

> Q:      To your knowledge is there anything that took place between the strip search of Ms. Tardiff that is not recited or contained in Exhibit 8 to this deposition?
>
> [PC]:   Objection, instruct you not to answer, work product, attorney/client privilege and relevant [sic] to any kind of defense.  I withdraw the last piece of that objection.

To the extent that this question is comprehensible, it does not seek work product; it is a factual question.  The only basis on which the plaintiff seeks to uphold the instruction not to answer is the work-product doctrine.  Supplemental Response at 12.  I therefore assume that the attorney-client privilege was part of the "last piece" that was withdrawn by counsel and will not address it.  Contrary to the characterization by the plaintiff, *id*., I see in this question no request for "the attorney's understanding and/or belief with respect to his theories about the facts of the case[.]"  *Id*.  Stolt is instructed to answer the question, to the extent that he can understand it.

### Question 16

> Q:      If Ms. Tardiff had told you that she had been physically touched during her strip search, if, in fact, she had told you that, you would have made that a point at some phase of the litigations, whether it was a [c]omplaint or a settlement discussion at some point along the way in the litigation, is that fair to say?
>
> [PC]:   Objection, instruct you not to answer, work product.

This question goes to the heart of the defendants' estoppel claims; it asks about information relevant to her current claims the plaintiff may have withheld from class counsel in the earlier case.  In addition, it is a hypothetical question that asks about Stolt's current views, not about what he thought at the

relevant time.  The fact that class counsel, if the answer to this question is "yes," did not act in the ways specified in the question is some evidence that the plaintiff did not make such information known to class counsel.  Stolt is directed to answer this question.

### Question 17

> Q:        Did you rely on the accuracy and completeness of the information given to you by Laurie Tardiff in recommending to the court that Ms. Tardiff be appointed class representative?
>
> [PC]:        Objection, instruct not to answer, work product and not relevant to claims or defenses.

This question seeks information that is quite relevant to more than one of the defendants' affirmative defenses and counterclaims.  For the reasons already discussed, Stolt is directed to answer this question.

### Question 18

> Q:        And what was the information available to you that led you to represent to the court that Ms. Tardiff's claims were typical of the claims of the class?
>
> [PC]:        Objection, instruct not to answer, attorney/client privilege.

This is the first time that attorney-client privilege is apparently pressed as the basis for an instruction not to answer.  I say "apparently" because the plaintiff's most recent filing presents the following as a response to the motion to compel: "See Responses to Question No. 15 and Question No. 17."  *Id*. at 14.  The plaintiff's responses to both Question 15 and Question 17 are based on the work product doctrine, *id*. at 12-13, which was not asserted as a basis for directing Stolt not to answer this question.

In their initial motion the defendants argued that the plaintiff had waived the attorney-client privilege by submitting certain documents to this court on October 11, 2006, by her statements "in open court" about her communications with class counsel during the judicial settlement conference on

September 29, 2006 and by her deposition testimony. Motion at 7-10. The defendants list six

"communications" that "should be declared as appropriate for inquiry[,]" *id.* at 11, of which only the

third and fourth are possibly relevant to the question at issue. Those "communications" are:

> (3) whether [the plaintiff] related to her attorneys that she believed that her individual claims were worth from $500,000 to $1,000,000 before the Class Action was initiated as well as at any time thereafter; (4) what information she provided to Class Counsel regarding her strip search, and she came to believe when [sic] that her claims were much more valuable than the claims of absent class members and that her strip search experience was much more damaging than the strip searches of absent class members[.]

*Id.* Contrary to the assertions of the plaintiff in her initial response to the motion to compel,

Opposition at 8-9 & n.7, counsel for the defendants clearly did inquire at deposition, in this very

question at least, about what the plaintiff told class counsel at relevant points in time. On the showing

made — the party asserting the privilege having the burden of persuasion — the attorney-client

privilege, to the extent that it would otherwise bar this question, has been waived. Stolt is directed to

answer Question 18.


### Question 19

> Q:      Did you believe that Ms. Tardiff's damages were typical of the damages suffered by individual absent class members?

> [PC]:      Objection, work product, instruct not to answer and not relevant to any claim or defense.

Here, the work product objection is raised and it is applicable. The belief of class counsel, in and of

itself, as opposed to an opinion having been conveyed to the plaintiff or to the court, is not relevant to

the affirmative defenses or counterclaims. The motion to compel a response to this question is denied.

### Question 20

> Q:      I'm going to give you something out of your pile. Exhibit 2, turn to page 18, lines 24 and 25, and just read those to yourself over onto page 19,

> lines 1 through 16, and just let me know when you've had a chance to read those.
>
> A:        Okay.
>
> Q:        On page 19 Judge Carter asked you is there anything to indicate that her, meaning Ms. Tardiff's, level of damages is more exacerbated than other members of the class and your answer was not — not to counsel's knowledge, Your Honor.  My question is —
>
> A:        I'm sorry, where are you?
>
> Q:        Page 19, lines 12 through 16.  What was the basis of your answer to the court on lines 15 and 16?
>
> [PC]:        Objection, instruct you not to answer.  It's work product, it may be attorney/client privilege and it's not relevant to any claim or defense in this case.

This question goes to the issue of when the plaintiff took the position that her damages were more extensive than those of other class members, which in turn is relevant to more than one of the defendants' affirmative defenses and counterclaims.  The work-product objection is overruled.  With respect to the assertion of the attorney-client privilege,[4] it is certainly possible that the basis of Stolt's answer was information he obtained during discussions with the plaintiff.  Assuming that fact, I have already determined in this case that the plaintiff has waived the privilege with respect to documents containing material that is related to the subject matter of the plaintiff's disclosures to Judge Carter in connection with the class-action case.  Memorandum Decision at 4.  There is no reason why this waiver should not apply as well to information obtained verbally.  And again, this question does implicate one or more of the three statements that the plaintiff admits were disclosures of information otherwise subject to the attorney-client privilege, Opposition at 8-9 & n.7, providing another basis to compel Stolt to answer this question.  Stolt is directed to answer Question 20.

---

[4] The plaintiff's specific response with respect to Question 20 is: "See Reponses to Question No. 12 and Question No. 17."  Supplemental Response at 14.  Both of those responses involve only the work-product doctrine.  *Id.* at 11, 13.  I accordingly address the attorney-client privilege only to the extent that it has been properly preserved as a basis for opposition to the motion to compel with (*continued on next page*)

**Question 21**

Q:        Referring to page 18, lines 24 and 25, and then over onto page 19, lines 1 through 4, were you telling the court that it was only after Ms. Tardiff saw the draft settlement papers that she first told you that she perceived the value of her damages to be much higher than you saw them?

[PC]:        Same objection, same instruction.

This question immediately follows Question 20 in the Stolt deposition, so the "same objection, same instruction" are those asserted above in response to that question. The analysis is the same as well. Stolt is directed to answer this question.

**Question 22**

Q:        At any time before — strike that, please.  Up until the time the document entitled Settlement Agreement was signed on September 29, 2006, had Ms. Tardiff ever told you that she perceived that her damages were much greater than the damages of any absent class member?

*  *  *

A:        Yes.

Q:        When did she first tell you that?

A:        At numerous points throughout the case.

Q:        Did you agree with her?

[PC]:        I'm going to instruct you not to answer.  That's work product.

The question does seek attorney work product.  As I have held previously, the opinion of class counsel, in and of itself, is not relevant to the defendants' affirmative defenses or counterclaims and, without more, is protected work product.  The motion to compel an answer to this question is denied.

**Question 23**

Q:        Did you believe from the inception of your representation of Ms. Tardiff and the class up until October 10, 2006 and including October 19,

--------

respect to Question 20.

15

2006 that Ms. Tardiff's individual interests were consistent with the interests
of absent class members?

[PC]:      Objection, instruct you not to answer, work product.

For purposes of this analysis, this question does not differ from Question 22.  The motion to compel an

answer to this question is denied.

### Question 24

Q:      What were her obligations as you understood it as a class
representative[]?

A:      I've never been — [e]xcuse me.

[PC]:      I'm going to object and instruct you not to answer that question,
work product.

Again, this question appears to seek attorney work product, an opinion that is not relevant to the

defendants' affirmative defenses or counterclaims.  The motion to compel an answer to this question is

denied.

### Question 25

Q:      At any time while she was the class representative did Laurie
Tardiff have obligations to absent class members?

A:      I think your question is an oxymoron but certainly.  She was the
class representative.

Q:      And what were those obligations to the absent class members?

[PC]:      Objection, instruct you not to answer, work product and also not
relevant to any claim or defense.

The defendants are not absent class members and cannot claim to represent them.  I fail to see the

relevance of this question to their affirmative defenses or counterclaims, but I also doubt whether the

information sought is attorney work product.  A lawyer without any connection to the plaintiff or the

class action in which she initially appeared as the class representative would be able to answer this

question.  Stolt could answer this question without considering or exposing any of his "mental

impressions, conclusions, opinions, or legal theories . . . concerning the [class action] litigation[,]" in the words of Rule 26(b)(3).  Because questions asked during discovery need only seek information that might lead to evidence admissible at trial, making relevance, standing alone, unavailable as a basis for instructing a deponent not to answer a deposition question, I will order Stolt to answer this question.

## Question 26

> Q:        If Ms. Tardiff had told you before September 30, 2006, specifically before Exhibit 11 was signed, that she thought her claim was worth between a half million and a million dollars, would you have perceived that as creating a conflict for you in representing Ms. Tardiff and representing the class?

> [PC]:     Objection[,] instruct you not to answer, attorney/client privilege — I'm sorry, not attorney/client privilege, work product.

This is a hypothetical question.  It does not seek information that fits within the definition of work product — "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . .  In ordering discovery of such materials . . . the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney . . . concerning the litigation[,]" Fed. R. Civ. P. 26(b)(3). I grant the motion to compel an answer to this question.

## Question 27

> Q:        What did you understand to be the range in dollars of the claims of class members?

> [PC]:     Object, instruct you not to answer on the basis of work product.

This question seeks work product that is not relevant to the affirmative defenses and counterclaims of the defendants.  For the reasons previously discussed, the motion to compel an answer to this question is denied.

**Question 28**

> Q:      Did you ever believe that the claims of class members were worth $300,000 individually?
>
> [PC]:    Same objection, same instruction.

The "[s]ame objection, same instruction" were apparently those made in response to Question 27. My ruling is the same as well.

**Question 29**

> Q:      What did you feel was necessary for you to have in terms of facts relative to the damages claims of both Ms. Tardiff on the one hand and other class members on the other hand in order to make an assessment that Ms. Tardiff's damage claims were typical of the damage claims of the class as a whole?
>
> [PC]:    Object on the grounds of work product, instruct you not to answer, not relevant to any claim or defense.

Again, this question does seek work product but does not seek information that is relevant to any of the defendants' affirmative defenses or counterclaims. The motion to compel an answer to this question is denied.

**Question 30**

> Q:      Did you make an assessment of Ms. Tardiff's claim for damages on the one hand and the damage claims for other class members on the other hand in order to determine whether Ms. Tardiff's damage claim was typical of the damage claims of other class members before you asked Ms. Tardiff to be appointed as class representative?
>
> [PC]:    Same objection and instructions.

Assuming that the "[s]ame objection and instructions" are those made to Question 29, this question also seeks work product that is not relevant to the defendants' affirmative defenses or counterclaims. The motion to compel a response to this question is denied.

## Question 31

> Q:        If Ms. Tardiff had said to you that she believed that her damages
> were much more harmful than the damages suffered by other class members,
> would you have been concerned that her claims were not typical of other
> class members for purposes of her being class representative?
>
> [PC]:        Object to the form of the question, again, the use of other, whether
> it's some or all, and, secondly, it calls for speculation and, third, I object on
> work product and instruct you not to answer.

With respect to the objection and instruction based on work product, the only objection that would

justify a failure to respond to the question at deposition, my ruling is the same as it was with respect to

Question 26.  Stolt is directed to answer this question.

## Question 32

> Q:        It's on page 49 of the October 11, 2006 transcript, and I guess I'd
> just ask you to read to yourself lines 16 through 22 and you can obviously
> read any more of that that you feel you need to.
> A.:        Okay.
>
> * * *
>
> Q:        When you heard Ms. Tardiff make the statement that's contained in
> the reference to that portion of the October 11 transcript in open court were
> you surprised?
> [PC]:        Objection, instruct you not to answer, attorney work product.

Because this question asks about an attorney's mental impression concerning the class action litigation,

I conclude that it seeks work product, although the question in this case is a close one.  Once that

determination has been made, I need only consider the relevance of the information sought to the

defendants' affirmative defenses and counterclaims.  Again, the question is a close one but because

Stolt's "surprise" might be evidence concerning when the plaintiff made decisions that were

incompatible with her position as class representative, an issue that relates to more than one of the

defenses and counterclaims, the question seeks relevant information and the work product privilege is

therefore overcome.  Stolt will answer this question.

**Question 33**

Q:        Did Ms. Tardiff tell you either at the time that the class was certified or before the class was certified that she believed her claim was worth a whole lot more than anyone else's claim?

A:        Not that I recall.

Q:        If she had told you that, would that have impacted your decision to recommend that she be appointed class representative as opposed to someone else?

[PC]:     Objection, instruct you not to answer on the grounds of work product.

For the reasons discussed in connection with Questions 26 and 31, I direct Stolt to answer this hypothetical question.

**Question 34**

Q:        Did other members of the class in this case expect to receive a half million to a million dollars?

A:        I have no idea.  It would only be speculation as to what they expected to receive.

Q:        Did you think it would be reasonable as class counsel for them to recover that amount?

[PC]:     Excuse me, I'm going to assert that's work product and instruct him not to answer.

Like Questions 19 and 22, this question seeks work product and Stolt's opinion is irrelevant to the defendants' affirmative defenses and counterclaims.  The motion to compel an answer to this question is denied.

**Question 35**

Q:      Do you believe that Rule 3.4(c) dealing with simultaneous representation of different clients in the same or similar matters is implicated by a class representative's assertion of a claim that is in conflict with the claims of other class members?

[PC]:      I'm going to object to the form of the question.  It asks for an expert opinion.  He has not been designated on that and, secondly, to the extent that it has any applicability whatsoever to the Laurie Tardiff case, I instruct you not to answer as work product.

This question does not seek work product.  The other objections do not provide a basis for a deponent to refuse to answer a question.  Stolt is directed to answer this question.

**Question 36**

Q:      Okay.  When you saw the October 4, 2006 letter to you and Sumner that's Exhibit 13 did you believe that you might have a conflict of interest in representing Laurie Tardiff with respect to or vis-à-vis the res[]t of the class at that point in time?

[PC]:      Object on work product grounds and instruct you not to answer.

This question seeks work product that is irrelevant to the defendants' affirmative defenses and counterclaims.  The motion to compel a response to this question is denied.

**Question 37**

Q:      And when you first saw Exhibit 14 did you believe that there could potentially be a conflict of interest between Laurie Tardiff and the rest of the class?

A:      Could potentially be a —

[PC]:      I'm going to instruct you not to answer on work product grounds.

This question does not differ from Question 36 for purposes of analysis.  The motion to compel a response to this question is denied for the same reasons.

21

**Question 38**

Q:      And you had personal access to Ms. Tardiff during the course of the conference, is that right?

A:      Laurie Tardiff attended the conference.

Q:      And she attended both on her own behalf and on behalf of the class that she was appointed to represent, is that correct?

[PC]:   I'm going to object to that question on the grounds of work product and instruct him not to answer.

This question does not seek work product.  If Stolt can answer the question, he is directed to do so.

**Question 39**

Q:      How could you have reached a Settlement Agreement without having a discussion at least with the class representative as to what they could expect their share of the settlement proceeds to be?

[PC]:   Objection, instruct the witness not to answer, work product.

When this question is read in context, with the preceding four pages of the transcript, it is apparent that this question does not seek Stolt's mental impressions, conclusions, opinions, or legal theories concerning the class action litigation.  Stolt Deposition at 87-91.  Stolt has already testified that he had not had such a discussion with the plaintiff and the question simply asks how he could have failed to do so.  For purposes of a motion to compel, the fact that the question does not seek work product is dispositive.  Stolt is directed to answer this question.

**Question 40**

Q:      To your knowledge, did Dale Thistle or Sumner Lipman explain to Laurie Tardiff their understanding of what Exhibit 11, the Settlement Agreement, meant before she signed it?

A:      I have an assumption but I don't know

Q:      Did you hear any such explanation from Lipman and/or Thistle to Laurie Tardiff regarding the meaning and contents of the Settlement Agreement that is Exhibit 11?

* * *

A:        Yes.

Q:        What did you hear?

[PC]:     I instruct you not to answer that.  That is work product and attorney/client.

This question appears to seek information that is subject to the attorney-client privilege, but the subject matter of the question again is an exchange that is related to the plaintiff's judicial disclosures to Judge Carter, as discussed in my earlier decision.  Memorandum Decision at 4.  The question also appears to seek information that falls within the scope of attorney work product under Rule 26(b)(3), but again that information is directly relevant to one or more of the defendants' affirmative defenses and counterclaims, and for the reasons discussed in connection with Question 1, the defendants are nonetheless entitled to an answer to this question.  Stolt is directed to answer Question 40.

### Question 41

Q:        Did you ever tell anybody that as you neared the end of your negotiation process Judge Singal asked Laurie Tardiff very clearly what was being discussed and if she understood it?

[PC]:     If the answer to that involves conversations with co-counsel, I ask you not to answer as work product.

A:        No.

I do not see any need to compel a response to this question, when the transcript shows that it was answered.  Stolt Deposition at 99.  The answer is not included in the defendants' supplemental filing. The motion to compel as to this question is denied.

### Question 42

Q:        Did you ever tell anybody that at the time Judge Singal gave Laurie the settlement papers and asked her to sign them he asked her if she understood what was being discussed and if she agreed with it?

[PC]:    Again, to the extent that that would be a discussion with co-counsel, I instruct you not to answer as work product.

* * *

A:       No.

Again, the fact that this question was answered by the deponent is omitted from the defendants'

supplemental filing.  As was the case with Question 41, there is nothing to compel.

## Question 43

Q:       When the Settlement Agreement was signed with Judge Singal did you envision in any way under that agreement, including the Nilsen agreement, that it incorporated that any class member could get $300,000 of the settlement fund?

* * *

[PC]:    I'm going to object to that question as violating the work product rule and instruct you not to answer.

This question does seek attorney work product and the answer would not be relevant to any of the

defendants' affirmative defenses or counterclaims.  The motion to compel is denied.

## II.  Tardiff Deposition

I will approach the defendants' motion to compel answers to certain questions posed to the

plaintiff at her deposition as I did the questions posed to Stolt.

## Questions 1 and 2

Q [1]:   Do you consider yourself honest all of the time, most of the time or sometimes?

[PC]:    Object to the form of the question.  It's argumentative, don't bother to answer the question. . . . It is abusive and a question that is intended solely to harass the witness and it's argumentative. . . .  Or it's not likely to lead to the discovery of admissible evidence and this isn't.

* * *

[PC]:    You don't have to bother to pose the question again.  The same instruction and she's not going to answer. . . .  She's not going to answer period unless I'm ordered by a court to either withdraw my objection or she is ordered by a court to answer the question.  So move on to your next substantive question which attempts to discover relevant admissible information.

24

> Q[2]:      Can you tell me, ma'am, are you honest all the time, most of the time or sometime?
>
> [PC]:      Don't answer the question.

I have added the last paragraph of Question 1 from the transcript of the deposition, [Deposition of] Laurie Tardiff ("Plaintiff's Deposition") (Docket No. 43) at 37-38, to what was presented in the defendants' supplemental filing.  None of the grounds stated by the plaintiff's attorney for instructing her not to answer these questions are within those permitted by Rule 30(d)(1): "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)."

The plaintiff attempts to deal with this obvious shortcoming in her attorney's directions at her deposition by contending that questions at deposition about the deponent's honesty go to credibility, "a matter to be addressed by the fact finder, based, at least in part, on the witness's demeanor at trial[]" and that her credibility is not relevant to any of the defendants' claims or defenses.  Supplemental Response at 26.  Relevance is not a permissible basis on which to instruct a deponent not to answer a question.  Many of the matters that will be addressed by the fact finder at trial are explored first in depositions.  Neither of these arguments supports the plaintiff's refusal to answer these questions.

The plaintiff next argues that her refusal to answer should stand because later in the deposition she "answered questions about her own honesty as applied to specific issues . . . in a way that should lead the Court to conclude that defendants got appropriate answers to their questions and that there is no need to compel answers to the broader questions put to her earlier."  *Id.*  "She then went on to give full and apparently candid answers to many questions involving her health and treatment for emotional distress without objection . . . until defendant's [sic] attorney's questions became repetitive and harassing to the extent that he tried to stop her from taking a break when she wanted one."  *Id.* at 26-27.  The plaintiff offers no reason why the defendants were not entitled to answers to the questions at

issue.  Her own assessment that her later responses to more limited questions were honest and candid

has no bearing on that entitlement.  If defense counsel was harassing her, the remedy, as contemplated

by Rule 30(d)(1), was a motion under Rule 30(d)(4), which was not pursued in this case.

The plaintiff is directed to answer Questions 1 and 2.

### Question 3

Q:            Sometime shortly after September 29, 2006 you advised your
attorneys as well as the court that you didn't want to be a part of the
settlement that had been discussed on September 29, 2006, is that right?

[PC]:       I object and instruct her not to answer to the extent that you include
contacts with attorneys other than those which have been explicitly already
waived [.]

The plaintiff contends that the defendants have waived any objection to the instruction not to answer by

the subsequent actions of their attorney at the deposition.  *Id*. at 27.  I can see how the transcript of the

deposition could lead a reader to conclude that the defendants' attorney had abandoned any attempt to

have the plaintiff answer this question with respect to any attorneys other than those listed as class

counsel as of September 29, 2006.  Plaintiff's Deposition at 81-87.  To the extent that the defendants

nonetheless seek an answer with respect to any other attorney whom the plaintiff might have

considered "hers" at that time, I do not see in the record any indication that the attorney-client

privilege has been waived with respect to such an attorney and the motion to compel is denied.

### Questions 4-7

Q[4]:       All right, and so you had authorized your attorney to communicate
with the individual who might be responsible for paying money to you the
details of the strip search and the damages that you claim the strip search
caused you, is that correct?

[PC]:       Don't answer that question, attorney/client privilege.

Q[5]:       Did you, in fact, authorize Mr. Thistle to extend an offer of
settlement in the amount of $75,000?

> [PC]:      Don't answer that question, attorney/client privilege and Rule 408 privilege.
>
> Q[6]:      You knew Exhibit 8 was being sent to somebody with the hopes of getting you some money, is that fair to say?
>
> [PC]:      Object to the question[,] attorney/client privilege and Rule 408 privilege.
> Q[7]:      Okay, and you're the one that signed the [a]ffidavit, right?
>
> A:         Yes.
>
> Q:         And you knew that Exhibit 8 was being sent to try to get you a settlement, right?
> [PC]:      Excuse me, don't answer that question.   It's attorney/client privilege and Rule 408.

The plaintiff contends that "a reading of the entire testimony establishes that defendants got appropriate answers where the attorney-client privilege had been waived and did not press the questions where the waiver was not clear."  Supplemental Response at 29.  I have reviewed the portion of the deposition transcript cited by the plaintiff, pages 103-06, *id*., and I do not agree that defendants' counsel "apparently implicitly agree[d] that [defendants' counsel] was entitled to inquire as to the public documents but not as to 'conversations she would have had with her lawyer[,]'" *id*. The lawyer conducting a deposition does not have to reiterate a question in order to avoid being deemed to have waived his claim of right to ask it.

Questions 6 and 7 do not implicate the attorney-client privilege; they ask only what the plaintiff knew at a particular time.  The plaintiff is directed to answer those questions.  Questions 4 and 5 ask about an attorney-client conversation with respect to a claim and I do not see anything in the documents I reviewed in connection with the motion to quash that relates such a conversation to the subject matter of the plaintiff's judicial disclosures.  The motion to compel is denied as to Questions 4 and 5.

### Questions 8 and 9

Q[8]:   Did you at any point sign a fee or a representation agreement with Dale Thistle?
[PC]:   Don't answer that question.  That would be an attorney/client communication.

Q[9]:   Did you have any sort of fee or representation agreement with either Sumner Lipman or Bob Stolt or their law firm, Lipman Katz & McKee?

[PC]:   Don't answer that question, attorney/client privilege.

The plaintiff has withdrawn her objection to these questions.  Supplemental Response at 29-30.  She is directed to answer them.

### Questions 10 and 11

Q[10]:   When was the first time you learned you might have a claim against Knox County as a result of your strip search?

[PC]:   If that occasion was when you talked with a lawyer I instruct you not to answer the question.

Q[11]:   I see, okay.  So when did you first realize after February 7, 2001 that you might be able to bring a claim for money against Knox County as a result of the strip search?

A:   I guess I can't answer that, can I?

[PC]:   Not if it came from an attorney.

The plaintiff contends that the information sought by these questions is not relevant to the defendants' claims and that she did not waive the attorney-client privilege with respect to the information sought by these questions.  Supplemental Response at 30-31.  Relevance is not an appropriate basis for a directive to a deponent not to answer a question.  These questions only ask when the plaintiff realized that she might have a claim.  They do not ask how she came to that realization.  They can be answered without revealing any information protected by the attorney-client privilege.  *See, e.g., Thurmond v. Compaq Computer Corp.*, 198 F.R.D. 475, 483 (E.D.Tex. 2000) ("[A]ttorney-client privilege does

not reach facts within the client's knowledge, even if the client learned those facts through communications with counsel.")  *When* the plaintiff first realized that she had a claim is a fact clearly within her own knowledge; no lawyer told her that.  The plaintiff is directed to answer Questions 10 and 11.

## Question 12

> Q:       Was there any time that you would have taken $75,000 to settle your claim?
> A:       I guess that would be the lawyer/client privilege information.
>
> [PC]:    So don't answer it.

The plaintiff asserts that this question "address[es] the issue of the valuation of Ms. Tardiff's claim against the County[,]" and that "consultation with one's attorney in regard to the value of a claim must be regarded as a core area of the attorney-client relationship."   Supplemental Response at 32. Information is not protected by the attorney-client privilege simply because it was discussed by the client and his or her attorney.  This question asks only what the plaintiff would have done; it does not ask her why or whether her attorneys advised her to do so.  As the Supreme Court has pointed out: "The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.]"  *Upjohn Co. v. United States,* 449 U.S. 383, 395 (1981).   The privilege does not apply to this question.  The plaintiff is directed to answer it.

## Questions 13-20

> Q[13]:    What did you understand the class action lawsuit to be?
>
> [PC]:     If your understanding comes only from speaking with lawyers, I instruct you not to answer that question, speaking with your lawyers.
>
> Q[14]:    Did you understand that the court had to appoint you or approve you as the representative?

[PC]:      If you understanding of that came only from your attorneys then I instruct you not to answer the question.

Q[15]:    What was your understanding as to what it meant to be the class representative?

[PC]:      If your understanding came solely from speaking with your attorneys, I instruct you not to answer the question.

Q[16]:    Did you think you had any obligations as a class representative?

[PC]:      Same thing.

Q[17]:    Did you understand that to be class representative you had to persuade the court that your own claim was similar to and typical of the claims of other potential class members?

[PC]:      Regarding your entire understanding, if that understanding came from your attorneys, then I instruct you not to answer whatever the duties were or whatever the burdens were.

Q[18]:    Okay, what did you understand that a class action was?

[PC]:      If your only understanding of that is from attorneys, I instruct you not to answer.  If you have an understanding from other sources, you are free to answer about those other sources.

Q[19]:    Do you know whether as a class representative and to be appointed and approved as a class representative you have to convince the court that your claims are similar to and typical of the claims of other class members?

* * *

[PC]:      If your understanding of what your duty is comes solely from your attorneys, then I instruct you not to answer.

Q[20]:    What was your understanding as to your role, what you were supposed to do, as the class representative?

[PC]:      Same instruction.

The plaintiff contends that all of these questions impinge on "a core area of the attorney-client relationship deserving of strong protection, and Ms. Tardiff should not have to answer questions specifically directed toward the actual advice of her attorneys in this area."  Supplemental Response at 34.  First, none of these questions is "specifically directed toward the actual advice of [the

plaintiff's] attorneys[.]"  More important, each question asks the plaintiff about her own understanding. Case law establishes that the attorney-client privilege does not bar such questions. *See, e.g., Kansas Wastewater, Inc. v. Alliant Techsys., Inc.*, 217 F.R.D. 525, 528-29 (D. Kan. 2003) ("[T]he privilege does not protect *facts* that an attorney conveys to his client."); *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 173138 (S.D.N.Y. Apr. 12, 1996), at *4 (witness may be asked at deposition about facts within his knowledge even if source is privileged); *EEOC v. Stroh Brewery Co.*, 1991 WL 155507 (M.D.Fla. July 17, 1991), at *1 (questions attempting to discover deponent's understanding of capacity in which particular lawyer was functioning are proper and deponent may not refuse to answer on basis of attorney-client privilege).

The plaintiff is directed to answer Questions 13 through 20.

### Questions 21 and 22

Q[21]:     Did you think that your claim was different?

A:          Yes.

Q:          In what way?

A:          Much more harmful.

Q:          And when did you come to form that belief?

A:          In the beginning stages of the class action.

Q:          Did you tell Lipman or Stolt or Thistle that?

A:          I certainly did.

Q:          What did they say to you?

[PC]:       Don't answer that.

Q[22]:     I'm not asking you when.  You've already told me it was at the very beginning stage of the class action.  I'm asking what they said to you when you told them that you thought your claim was worth a lot more than other class members.

[PC]:       Same instruction.

The plaintiff asserts that she has not waived the privilege as to what her lawyers told her about her belief about the value of her claim.  Supplemental Response at 32.  Having once again reviewed the plaintiff's judicial disclosures, I disagree.  At least some of the things that class counsel said to the plaintiff about what she wanted to include in her damages claim are presented in that material.  The privilege has been waived as to these questions.  The plaintiff is directed to answer Questions 21 and 22.

### III.  Conclusion

For the foregoing reasons, the defendants' motion to compel is **GRANTED** as to the following questions in the deposition of Robert Stolt, with the numbers given to the questions in the defendants' supplemental filing (Docket No. 56): 1, 3, 5-6, 13, 15-18, 20-21, 25-26, 31-33, 35, and 38-40, and otherwise **DENIED**; and **GRANTED** as to the following questions in the deposition of the plaintiff, with the numbers given to the questions in the defendant's supplemental filing: 1-2 and 6-22, and otherwise **DENIED.**

Dated this 2nd day of November, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge