UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LAURIE TARDIFF, )<br>)<br>    PLAINTIFF )<br>)<br>v. )<br>)<br>KNOX COUNTY, ET AL., )<br>)<br>    DEFENDANTS ) | CIVIL NO. 07-10-P-H |

**PROCEDURAL ORDER ON OJBECTIONS TO
MAGISTRATE JUDGE'S DISCOVERY DECISION**

Both parties have objected to the Magistrate Judge's discovery decision (Docket Item 70) concerning attorney-client privilege and work product protection.[1] The genesis of the discovery dispute is a settlement conference that was part of a prior class action lawsuit. In that class action, the individual plaintiff here, Laurie Tardiff, was the only class representative at the time of the settlement conference.[2] The class action complaint asserted that Knox County, the defendant in this lawsuit, had conducted unconstitutional strip searches.[3] Tardiff and the class lawyers signed a settlement agreement with Knox County on September 29, 2006, but within days Tardiff became

---

[1] Knox County and an unknown correctional officer ("Jane Doe") are currently the named defendants in this lawsuit. For convenience, I refer to them collectively as "Knox County."
[2] Judge Carter of this District presided over the prior class action, see Docket No. 2:02cv251-GC ("Tardiff I"). It was captioned Tardiff v. Knox County throughout its first four years, but eventually re-captioned Dare v. Knox County after Tardiff opted out of the class. I will refer to the current lawsuit (Docket No. 2:07cv10-DBH) as "Tardiff II."
[3] The Knox County Sheriff and certain correctional officers were also defendants in the class action.

dissatisfied with her projected share of the class proceeds and tried to withdraw her agreement to the class settlement. The class action nevertheless settled without her (another class member was substituted as class representative). With a new lawyer, Tardiff brought this separate lawsuit making the same claim on her individual behalf. Knox County wants to hold Tardiff to her original agreement during the class action, claiming accord and satisfaction, estoppel, breach of contract, and waiver (by affirmative defense and counterclaim). To support those defenses and counterclaims, Knox County wants to discover information about communications between Tardiff and the class action lawyers, as well as their understandings, in connection with the original settlement conference and agreement. I conclude that I cannot fairly resolve the issues of attorney-client privilege or work product protection until I clarify as a matter of law the defenses or counterclaims that are open to a class action defendant under these circumstances. To that end, I will seek briefing.[4]

---

[4] I note that in a June 25, 2007, filing concerning a discovery dispute, a lawyer for the defendants stated:
> Attorney Robitzek has informed me that the plaintiff intends on filing a motion for summary judgment on the counterclaim in the very near future. Attorney Robitzek feels that the defendants should not have free rein to conduct discovery until there is at least some preliminary legal determination as to the merits of the counterclaim. The defendants' position is that the discovery contemplated would be necessary to respond to the plaintiff's statement of uncontested material facts and to provide record references to support the defendants' own statement of additional material facts.

Tardiff II, Letter from Peter T. Marchesi, Counsel for Knox County, to Magistrate Judge David Cohen, at 2 (June 25, 2007) (Docket Item 11). The Record does not reflect how this issue was resolved. The briefing and argument I contemplate will allow Knox County to show how the discovery it seeks could support viable defenses and counterclaims.

**BACKGROUND**

I give the following more detailed background by way of explanation. The information comes from court records.

In 2002, Laurie Tardiff sued Knox County, the Knox County Sheriff, and Knox County correctional officers for an allegedly unconstitutional strip search when she was arrested pursuant to a warrant for allegedly tampering with a witness. See Tardiff I, First Amended Compl. (Docket Item 2). Lawyers Sumner Lipman, Robert Stolt, and Dale Thistle filed the complaint, seeking class action status and naming Tardiff as the only class representative. Judge Carter certified a class, and the First Circuit affirmed his class certification. See Tardiff v. Knox County, 365 F.3d 1 (1st Cir. 2004). Thereafter, Judge Carter granted the plaintiffs' motion for summary judgment in regard to Knox County's liability for unconstitutional searches. See Tardiff I, Order Granting In Part and Denying in Part Plaintiffs' Mot. Partial for Summ. J. (Docket Item 141). Later he decertified the damages portion of the class, but retained class certification for liability. Id., Order Vacating Prior Order Re: Bifurcation for Trial and Decertifying Class Action on Issues of Eligibility for Class Membership and Determination of Individual Damages (Docket Item 319).

On the eve of trial, the parties requested a settlement conference before Judge Singal. As a result of the conference, a document entitled "Settlement Agreement" was signed on September 29, 2006, for $3 million in settlement of the class claims. See id., Settlement Agreement (Docket Item 366). Tardiff signed the document as class representative and Sumner Lipman signed the

document as attorney for the class.  See id; Tardiff II, Defs' Obj. to Pl.'s Mot. to Quash Subpoenas, at 2 (Docket Item 17).  Lawyers for the class action defendants also signed the document, but made clear that they did not yet have authority to bind their clients and would have to obtain that authorization by vote of the County and the Risk Pool, events scheduled to occur by 1:00 p.m. October 2, 2006.  See Tardiff I, Settlement Agreement (Docket Item 366).  Defense counsel agreed to recommend the settlement to their clients.  Id.  The defendant parties subsequently did agree, and the Court was notified October 2, 2006.  See id., Notice (Docket Item 329).

By letter of October 6, 2006, Tardiff informed Judge Carter and Judge Singal that she did not agree to a proposed settlement document dated October 3, 2006.  See id., Letter from Laurie L. Tardiff to Judge Carter and Judge Singal (Oct. 6, 2006) (Docket Item 343).  She also stated:

> I would like to say that I am not in agreement of the settlement letter on Sept 29th when I met with the defense attorneys and plaintiffs attorneys with Judge Singal. I initially signed this off but with an assumption that my lgal [sic] reps would make sure that part of that settlement would cover my damages.  At this time I am not signing off in this settlement until there is an agreement in place for my monetary damages individually as well as the class representative.  I am asking that I have a conferece [sic] with you Judge Carter and Judge Singal in private chambers.

Id.  Tardiff enclosed correspondence between her and the class lawyers that revealed that she wanted between $300,000 and $500,000 for her damages

alone.  Id., Ex. B.[5]  (Ultimately, Judge Carter approved a proposed distribution to each class member of $5,935.  Id., Judgment, at 2 (Docket Item 441).)

As a result, Tardiff, class lawyers Robert Stolt and Dale Thistle, and lawyers for the defendants attended a conference before Judge Carter on October 11, 2006.  At the conference, Judge Carter made clear that in his opinion there was no enforceable settlement agreement.  See id., Tr. at 4–5, 52 (Docket Item 357) ("It's obvious to me that there is not agreement to all of the essential terms of the settlement of this case.").  He also made clear that he expected Tardiff to opt out of the settlement and that he would approve any settlement only if it created a new opportunity for putative damage class members to opt out.  See id. at 21-22, 65.  During this conference, the defendants maintained that they considered Tardiff bound by her conduct at the settlement conference on September 29.  They stated:  "[p]art of what we bargained for was buying our peace with respect to her claim specifically."  Id. at 47.  However, they did not walk away from the settlement because of Tardiff's newly taken position or the Judge's statements.  Instead, they continued to work toward a settlement, seeking at the same time to bind Tardiff.

---

[5] Tardiff concedes she waived the attorney-client privilege for those communications that she disclosed as attachments to her letter to Judge Carter and Judge Singal.  See Tardiff II, Pl. Laurie L. Tardiff's Reply to Defs' Obj. to Pl.'s Mot. to Quash Subpoenas (Docket Item 19).  Based upon these waivers, Magistrate Judge Cohen ordered production of additional, related documents containing communications between Tardiff and the class lawyers.  See id., Mem. Decision and Order on Motion to Quash, at 3–5 (Docket Item 24).  Tardiff did not appeal that order.

Tardiff engaged separate counsel and on October 17, 2006, the class lawyers moved to strike Tardiff as the class representative. Id., Mot. to Substitute Dale Dare as Class Representative (Docket Item 355). Tardiff made her own motion to withdraw as class representative. Id., Mot. for Leave to Withdraw as Class Representative (Docket Item 356). Tardiff's motion recited accurately that, at that point, only a liability class had certification and no settlement agreement had yet obtained court approval. See id. Tardiff said in her motion that if a settlement were not approved, she would not opt out of the liability class, but would remain in it and proceed on her individual damages claim (the damage class having been decertified). Id. She also said that if Judge Carter did approve a settlement for the class, she would seek to proceed individually. Id. Ultimately, Judge Carter granted her motion to withdraw as class representative without objection, id., Order on Mot. in Respect to Change of Class Representative (Docket Item 367), and a new class representative was substituted. The defendants continued their efforts to achieve a settlement and to bind Tardiff.

At a November 27, 2006, conference Judge Carter repeatedly stated that in his view there was as yet no settlement agreement because (a) the parties did not agree on its essential terms; and (b) the Judge had not approved it. See id., Tr. at 14–16 (Docket Item 375) (Judge Carter stating, "[i]t's my position that there was no enforceable agreement ever formed because, A, the parties never agreed to all the essential terms, and B, I never approved it. . . . [The agreement] doesn't bind anybody. There's nobody in this room that's bound by

it or out there in the class."). Judge Carter stated expressly that the parties still had the option to try the case. Id. at 6. He continued to insist that any agreement contain an opt-out opportunity for all class members, including Tardiff. Id. at 4–5, 8–9. The defendants' lawyers continued to insist that they considered Tardiff bound to the September 29th agreement. Id. at 6. Judge Carter stated that he could not resolve that issue because it would not become justiciable unless, and until, Tardiff opted out of any approved settlement and brought her own lawsuit and the defendants pleaded accord and satisfaction in that new lawsuit. Id. at 8. Judge Carter did say that he would accept language in a new version of a proposed settlement agreement that the new version would not affect whatever the previous rights and liabilities were between Tardiff and the defendants. Id. at 17, 23.

At a December 18, 2006, hearing, Judge Carter reiterated his view that the September 29th conference did not produce an effective settlement agreement, but said that he was "not resolving any of those questions." Id., Tr. at 10 (Docket Item 383). On December 18, 2006, Judge Carter ultimately approved the Third Final Settlement Agreement (Docket Item 376). Id., Order on Mot. for Approval of Third Final Class Settlement Agreement (Docket Item 378). Judge Carter's approval contains a paragraph dealing solely with Tardiff, stating that it makes no determination about her rights or whether she is bound by any settlement agreement.[6]

---

[6] "The Court NOTES that Ms. Tardiff, the previously designated class representative, presently remains as a putative class member. The Court is not asked to make, and does not make, any
*(continued on next page)*

On February 1, 2007, Tardiff filed this separate lawsuit against Knox County and Correctional Officer Jane Doe, making the same claim as presented by the class action—an unconstitutional search. In its answer to Tardiff's complaint, Knox County raised three affirmative defenses relevant to this dispute: waiver, estoppel, and accord and satisfaction. See Tardiff II, Defs' Ans. to Pl.'s Compl. and Countercl., ¶¶ 1–3 (Docket Item 7). It also asserted counterclaims against Tardiff for breach of contract and equitable estoppel. See id., ¶¶ 24–32.

On April 23, 2007, at the Final Fairness Hearing for the class action, Judge Carter stated:

> I have found here that there was no viable, enforceable settlement reached as a result of the September 28th [sic] proceedings before Judge Singal. And I've stated on the record my reasons for that. That being so, there is no way that I can understand how any Court could find that— reasonably find that [Tardiff] was in fact entitled to a share, is bound by a settlement agreement which had not yet been finalized so that anybody could agree to it.

Tardiff I, Tr. at 21–22 (Docket Item 404).

## ANALYSIS

The question is whether, under the facts I have recounted, Knox County has any basis in this lawsuit for seeking access to communications between

---

decision as to her rights in this litigation and intimates no opinion on any matter bearing on such subject, or whether she is subject to being bound by any Settlement Agreement proposed herein or that may be finally approved by the Court. The Court's ultimate resolution of any such issues, if any, shall not be a basis for any party or class member to challenge, inter partes, the viability or enforceability of the Third Final Settlement Agreement of the class action, if it is finally approved by the Court." Id. at 4 (emphasis in original). Tardiff did opt out. See Tardiff I, Opt Out List (Docket Item 396).

Tardiff and the class lawyers in connection with the September 29th settlement conference/agreement and their respective understandings.

I set forth Knox County's summary of the relevant defenses and counterclaims:

> **Breach of Contract:** Defendant's breach of contract counterclaim is premised on Tardiff having signed, without apparent reservation, a settlement agreement that was sufficiently complete in its essential elements to constitute an enforceable agreement and, thereafter, attempting to repudiate that agreement.
>
> **Equitable Estoppel:** Equitable Estoppel is alleged both as an affirmative defense and as a separate counterclaim cause of action. It is based on Tardiff's decision to sign the Settlement Agreement of September 29th either with the belief that the settlement served her interests and the interests of absent class members or without having formed those beliefs yet withholding those mental reservations from both the presiding judge, the Defendant and its attorneys, and, perhaps, from the attorneys representing Tardiff and the Class.
>
> **Waiver:** Defendant's waiver defense is based on Laurie Tardiff's decision to waive her right to proceed individually against Knox County in a separate cause of action by signing the Settlement Agreement of September 29th.
>
> **Judicial Estoppel:** Judicial estoppel is raised [as] an affirmative defense and arises from Tardiff's decision to affirmatively seek both certification of the class and designation by this Court as Class Representative pursuant to Rule 24 [sic] when, in fact, she did not believe that a class action was an appropriate mechanism for the resolution of her individual claims and she did not believe that her claims were similar to those of absent class members. It is also premised on Tardiff's decision to sign the Settlement Agreement without having determined that settlement was either in her best interests or that of the absent class members and having withheld all reservations about the settlement from the judge, the Defendant, and, possibly, Class Counsel.
>
> **Accord and Satisfaction:** Defendant's affirmative defense of Accord and Satisfaction is premised on Tardiff having entered into an agreement on September 29 by which her

> claims would be compensated and having thereby substituted that agreement for her individual cause of action.
>
> **Notice and Opt Out:** Also at issue is whether, assuming Tardiff entered into an otherwise binding settlement agreement, she may nonetheless opt out as provided in Rule 23(c)(2) for members of a class certified pursuant to Rule 23(b)(3), or whether the mandatory notice opt out provisions of Rule 23(c)(2)(B) are intended for and limited to absent class members rather than class representatives who were at all times engaged in the prosecution of the claim and participated in and, in this case, actually signed an agreement settling the classes [sic] claims.

Tardiff II, Def.'s Mot. to Compel Testimony, at 5-6 (Docket Item 39) (footnote omitted).

With respect to the class representative's (Tardiff's) observed behavior in attending the settlement conference and signing the document as class representative on September 29, 2006, I note the following principles of law:

- A class representative must always put the interest of the class ahead of her personal interest. See Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994) (approving a class action settlement despite objections by class representatives and noting "the named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands") (quoting Parker v. Anderson, 667 F.2d 1204, 1211 (5th Cir. 1982)); 2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 5:23 (2007) ("When a class complaint is filed, the class representative must always act for the best

10

interests of the class, even when individual interests might suggest otherwise.").

- The class representative is a fiduciary for the class. See Greenfield v. U.S. Healthcare, Inc., 146 F.R.D. 118, 125 (E.D. Pa. 1993); 2 Newberg on Class Actions § 5:23 ("the class representative is . . . charged with duties to the class that have been characterized by several courts as fiduciary in nature.") (emphasis added); 5 James Wm. Moore et al., Moore's Federal Practice § 23.25 (2006) ("The class representative acts as a fiduciary for the entire class.").

- The class representative has a duty of loyalty to the putative class. Id; see generally Linda S. Mullenix, Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in Litigation and Settlement Classes, 57 Vand. L. R. 1687, 1703–12 (2004).

- "A class representative cannot alone veto a settlement." Federal Judicial Center, Manual for Complex Litigation § 21.642 (2004).

- Moreover, "[i]f the judge concludes that class representatives have placed individual interests ahead of the class's and impeded a settlement that is advantageous to the class as a whole, the judge should take appropriate action, such as . . . removing the class representatives . . . ." Id.

With respect to what reliance Knox County could place on the September 29th transaction, I note the following:

11

- Rule 23, the federal class action rule, provides that no settlement agreement can become effective without the presiding judge's approval. Fed. R. Civ. P. 23(e)(1)(A).

- This Rule also explicitly gives the settlement judge authority to require a second opt-out opportunity for class members as a condition of approving any settlement. Fed. R. Civ. P. 23(e)(3); see also Advisory Committee Note to Fed. R. Civ. P. 23, 2003 Amendments, subdiv. (3), para. (3).

- The fear of excessive opt-outs often leads to explicit provisions in class settlement agreements (e.g., making the agreement void if more than a specified percentage opt out). See American Law Institute, Principles of the Law of Aggregate Litigation, Council Draft No. 1, at 237 (2007); 4 Newberg on Class Actions §§ 12:12, 12:19.[7]

Factually, in light of the events and statements that I have recounted, it seems indisputable that Knox County and its lawyers genuinely believed on September 29, 2006, that they had Tardiff's and the class action lawyers' agreement to the class action settlement terms that they negotiated before Judge Singal. They also learned within a few days that Tardiff did not want to be bound to any such agreement and that the presiding Judge did not believe

---

[7] The Rule also provides that "[a]ny class member may object to a proposed settlement . . . that requires court approval." Fed. R. Civ. P. 23(e)(4)(A) (emphasis added). In fact, "[i]n many class actions, one or more class representatives will object to a settlement and become adverse parties to the remaining class representatives (and the rest of the class)." Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 589 (3d Cir. 1999).

12

that there was any effective or enforceable settlement agreement. They continued to proceed to negotiate a settlement agreement with class counsel and to seek judicial approval, simultaneously insisting that Tardiff remained bound.

But given the legal obligations that Tardiff had as the named class representative, the law concerning what is required for an effective settlement agreement, and Judge Carter's statements on the record, the critical question is whether there is anything that could have occurred between Tardiff and class counsel in connection with the settlement conference/agreement, or whether there is any understanding that they might have had then, that could give rise to estoppel, breach of contract, accord and satisfaction, or waiver in this lawsuit. If not, further discovery in the realm of attorney-client privilege or work-product protection is unnecessary.[8] But if there is some set of understandings or communications that could support such defenses or counterclaims, articulation of how they might do so will help me determine the scope of any waiver or abrogation of attorney-client privilege and work product protection. (The federal law on these privileges and protections is not at all clear in this Circuit.)

Accordingly, I request the Clerk's Office to schedule a conference of counsel to discuss whether I have misstated or misunderstood the Record in any way and, if helpful, to discuss class action principles generally. At that

---

[8] See note 5 supra concerning discovery of attorney-client communications that has already occurred as a result of Tardiff's waiver and the Magistrate Judge's Order.

13

conference, I do not plan to decide legal issues, but rather to schedule briefing to enlighten my consideration of whether viable affirmative defenses and counterclaims support the requested discovery.

**SO ORDERED.**

**DATED THIS 11TH DAY OF JANUARY, 2008**

> **/S/ D. BROCK HORNBY**
> **D. BROCK HORNBY**
> **UNITED STATES DISTRICT JUDGE**

**U.S. DISTRICT COURT**
**DISTRICT OF MAINE (PORTLAND)**
**CIVIL DOCKET FOR CASE #: 2:07CV10 (DBH)**

| | | |
|---|---|---|
| **LAURIE TARDIFF,** | represented by | **WILLIAM D. ROBITZEK** |
| | | **PAUL F. MACRI** |
| **Plaintiff** | | Berman & Simmons, P.A. |
| | | P. O. BOX 961 |
| | | Lewiston, ME 04243 |
| | | (207) 784-3576 |
| | | email: |
| | | wrobitzek@bermansimmons.com |
| | | pmacri@bermansimmons.com |

**v.**

| | | |
|---|---|---|
| **KNOX COUNTY** | represented by | **PETER T. MARCHESI** |
| | | **WILLIAM GAGNE HOLMES** |
| **and** | | Wheeler & Arey, P.A. |
| | | P. O. BOX 376 |
| **JANE DOE,** | | Waterville, ME 04901 |
| | | (207) 873-7771 |
| **Defendants** | | email: pbear@wheelerlegal.com |
| | | wgh@wheelerlegal.com |