# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | | |
|---|---|---|
| LAURIE TARDIFF, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | CIVIL NO. 07-10-P-H |
| | ) | |
| KNOX COUNTY, ET AL., | ) | |
| | ) | |
| DEFENDANTS | ) | |

## DECISION AND ORDER ON SUMMARY JUDGMENT
## PART I:  GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DEFENDANTS' AFFIRMATIVE DEFENSES AND COUNTERCLAIMS, BUT DENYING IT WITH REGARD TO THE PRECLUSIVE EFFECTS OF THE PRIOR CLASS ACTION LITIGATION

In February 2001, the plaintiff was arrested for witness tampering and taken to the Knox County Jail.  There, a corrections officer performed a strip and visual body cavity search.  The plaintiff's claim against Knox County for violation of her constitutional rights proceeded initially as part of a class action, with the plaintiff as the named class representative.  Dissatisfied with the settlement agreement ultimately reached in the class action, the plaintiff opted out and then filed this separate suit under 42 U.S.C. § 1983.

The parties filed cross-motions for summary judgment that raise numerous legal issues resulting from the prior class action proceedings that are independent of the merits of the § 1983 claim.  For ease of organization and understanding, I address the issues resulting from the prior class action in this opinion (Part I).  I will address the merits of the plaintiff's substantive claim

that Knox County violated her Fourth Amendment rights in a separate opinion (Part II).

With regard to the prior class action proceedings, the plaintiff's motion for summary judgment presents two unusual issues.

1.     Does a class action representative implicitly waive her individual rights as a class member when she signs a settlement agreement?  I conclude that the answer is no.  A contractual waiver of the individual rights granted by Fed. R. Civ. P. 23 must be explicit.  Thus, summary judgment is **GRANTED** to the plaintiff on the defendants' counterclaims and affirmative defenses that are based on the class action's settlement.

2.     Can the named class representative, in a federal class action that settles, later opt out of the class action and settlement, and bring her own separate lawsuit?  I conclude that the answer is yes.  But when she does so, she cannot successfully claim issue preclusion (collateral estoppel) and certain other benefits from court decisions or litigation decisions made in the class action.  The plaintiff's request for summary judgment on the merits based on decisions reached in the class action litigation is therefore **DENIED**.

### FACTUAL & PROCEDURAL BACKGROUND

#### *(1)     The Arrest and Search*

The plaintiff Laurie L. Tardiff ("Tardiff") was arrested on February 7, 2001, on a charge of witness tampering, a felony under the Maine Criminal Code.  She was then brought to Knox County Jail.  There, a Knox County correctional officer performed a strip and visual body cavity search.

**(2)     *The Class Action***

Tardiff initially was the named class representative in a class action in this District challenging Knox County's strip and visual body cavity search policy.  See Dare v. Knox County, Docket No. 02-251 (D. Me.).[1]  The First Circuit affirmed Judge Gene Carter's certification of a litigation class.  Tardiff v. Knox County, 365 F.3d 1 (1st Cir. 2004).  Later, on partial summary judgment, Judge Carter held that Knox County's blanket policy—that all felony arrestees were subject to a strip and visual body cavity search—was unconstitutional under the Fourth Amendment as applied to arrestees charged with only a non-violent, non-weapon, non-drug-related felony.  See Tardiff, 397 F. Supp. 2d 115, 128–131 (D. Me. 2005).[2]  As the case approached trial, however, Judge Carter decertified the class with regard to damages.  See Tardiff, 2006 WL 2827556 (D. Me. Sept. 19, 2006).

After Judge Carter's summary judgment and decertification of the damage class, the parties participated in a settlement conference overseen by Judge George Z. Singal on September 29, 2006.  Tardiff attended along with class counsel (three lawyers).  Pl. Laurie L. Tardiff's Statement of Material Facts, ¶¶ 24–25 (Docket Item 105) ("Pl.'s SMF"); Defs.' Response to Statement of Facts and Statement of Additional Facts, ¶¶ 24–25 (Docket Item 121) ("Defs.'

---

[1] Dale Dare replaced Tardiff as the class representative on October 24, 2006.  See Tardiff v. Knox County, Order on Motions in Respect to Change of Class Representative, Docket No. 02-251 (D. Me. Oct. 24, 2006).  Citations to opinions and documents from the class action proceedings, Docket No. 02-251, retain the original caption.

[2] Summary judgment was also granted to the class on Knox County's and the Sheriff's liability under § 1983 for a custom or practice of searching misdemeanor arrestees.  See 397 F. Supp. 2d at 131–36, 140–43.

3

SMF").[3]  Knox County was represented at the conference by six lawyers and four other representatives.  Pl.'s SMF ¶ 26; Defs.' SMF ¶ 26.  At the conference, the parties signed a one-page, two-paragraph document:

Settlement Agreement

> The parties hereby agree to settle this case in exchange for Defendants establishing a common fund of Three Million Dollars ($3,000,000.00), said amount to include all attorneys' fees and costs incurred, as well as all claims administration expenses.  The parties agree that counsel for Plaintiff will seek to recover 30% of this fund to cover their fees and costs.  The parties agree that they will jointly move for re-certification of the class only for purposes of facilitating settlement and disbursing the balance of the above common fund to qualifying class members.
>
> This settlement is subject to the approval of both the County and the Risk Pool.  It is understood that Defense counsel will be recommending approval and that the necessary meetings and votes by both entities will occur before 1 PM on Monday, October 2, 2006.  Subject to obtaining this approval, the parties agree that the final settlement agreement presented to the Court for approval will utilize provisions and procedures found in the Amended Settlement Agreement approved in <u>Nilsen v. York County</u> (02-CV-212-P-H).  The parties will file their final written agreement along with a motion to re-certify the class on or before Tuesday, October 3, 2006.

Pl.'s SMF, Ex. O ("September 29 Agreement" or "Agreement").  Before signing the Agreement, class counsel inquired whether it mattered to Knox County what percentage of the $3 million settlement Tardiff would receive.  Defs.' SMF ¶ 63; Pl.'s Response to Defs.' SMF, ¶ 63 (Docket Item 144) ("Pl.'s Resp. SMF").  Knox County's counsel responded that it did not matter.  Defs.' SMF ¶ 63; Pl.'s Resp. SMF ¶ 63.  Sumner Lipman (listed as "Counsel for Plaintiff"), Laurie Tardiff (listed as "Plaintiff Laurie Tardiff Class Representative"), and Peter

---

[3] Knox County contends that the three lawyers attended the conference as counsel for Tardiff both in her individual capacity and as class representative.  Defs.' SMF ¶ 25.

Marchesi (listed as "Counsel for Defendant York County" and "Counsel for Defendant Sheriff Davey") then all signed the Agreement.   Pl.'s SMF ¶¶ 33–34, 36 & Ex. O; Defs.' SMF ¶¶ 33–34, 36.   When Tardiff signed the Agreement, she believed that her actual damages would come from the $3 million settlement fund and that she would not opt out.   Defs.' SMF ¶ 71; Pl.'s Resp. SMF ¶ 71.

On October 2, 2006, Judge Carter was notified that a settlement had been reached, indicating that Knox County and the Risk Pool approved the September 29 Agreement.

On October 6, 2006, Tardiff wrote a letter to Judges Carter and Singal expressing her unwillingness to adhere to the settlement terms:

> I am not in agreement of the settlement letter on Sept 29th . . . . I initially signed this off but with an assumption that my lgal [*sic*] reps would make sure that part of that settlement would cover my damages.  At this time I am not signing off in this settlement until there is an agreement in place for my monetary damages individually as well as the class representative.

Pl.'s SMF, Ex. R.   A proposed "Final Settlement Agreement" was submitted to the court on October 10, 2006.   Tardiff and counsel for both parties appeared before Judge Carter on October 11, 2006, to discuss the terms of that proposed settlement.   During that conference of counsel, Judge Carter stated:   "It's obvious to me that there is no agreement to all of the essential terms of the settlement of this case.   I'm intrigued by the possibility that after all of this

effort both counsel seem to think that there's a possibility that agreement can be achieved."  Pl.'s SMF ¶ 40; Defs.' SMF ¶ 40.[4]

Thereafter, Judge Carter refused to approve a $50,000 payment out of the settlement to Tardiff for her service as class representative.  Dare v. Knox County, Order on Motion for Approval of Class Settlement, Docket No. 02-251, at 2–3 (D. Me. Oct. 24, 2006).  He granted Tardiff's motion to withdraw as class representative on October 24, 2006.  See Pl.'s SMF ¶¶ 42–43; Defs.' SMF ¶¶ 42–43.

The class action parties continued to wrangle over the settlement terms.  Judge Carter denied the first motion for preliminary approval of the settlement, in part because it did not include a second opportunity for putative class members to opt out.[5]  See Dare, Order on Motion for Approval of Class

---

[4] Knox County requests that the statements by Judge Carter be stricken from the record because they are mere judicial musings that contain no material fact and are hearsay.  Defs.' SMF ¶¶ 40, 44-45, 48, citing Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).  Vazquez does not discuss judicial statements.

I do not accord Judge Carter's statements the weight of judicial rulings because he was never asked to make a judicial decision on whether the Agreement was enforceable.  But Judge Carter's statements are not hearsay, as they are not offered for their truth.  The views he expressed to the parties regarding enforceability of the Agreement are material to what Knox County representatives knew or should have known as they proceeded to seek a final, judicially approved settlement of the class action.

[5] The parties and Judge Carter refer to this as a "second" opt-out opportunity under Rule 23(e).  See e.g., Pl. Laurie L. Tardiff's Mot. for Summ. J., at 18–19 (Docket Item 104) ("Pl.'s Mot. for Summ. J."); Dare, Order on Motion for Approval of Class Settlement, at 2–3 (D. Me. Oct. 24, 2006).  I am not sure that is a correct characterization.  The Third Final Settlement Agreement—the one approved by Judge Carter—states:  "Class members have the right to be excluded from the settlement class pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure."  Dare, Third Final Settlement Agreement, Docket No. 02-251, at 10 (Docket Item 376); Dare, Order on Motion for Final Approval of Class Settlement, Docket No. 02-251 (D. Me. Apr. 24, 2007) (approving the Third Final Settlement Agreement).

Judge Carter initially certified a litigating class under Rule 23(b)(3) (as to which notice was given and all class members had an opportunity to opt-out).  Tardiff, 218 F.R.D. 332 (D. Me. 2003); Tardiff, Proposed Notice to Class Members, Docket No. 02-251 (Docket Item 129); Tardiff, Order Approving Notice to Class, Docket No. 02-251 (D. Me. Nov. 2, 2005).  Later, however, after deciding liability and reviewing the difficulties of damages proof, Judge Carter withdrew the certification and decertified the damage class, as Rule 23 (c)(1)(C) allows.  Tardiff, *(continued on next page)*

Settlement, at 2–3 (D. Me. Oct. 24, 2006).  At another hearing on November 27, 2006, Judge Carter told the parties: "It's my position that there was no enforceable agreement ever formed because, (A) the parties never agreed to all the essential terms, and (B) I never approved it . . . .  [The Agreement] doesn't bind anybody.  There's nobody in this room that's bound by it or out there in the class."  Pl.'s SMF ¶ 44; Defs.' SMF ¶ 44.  A new proposed settlement that permitted "[a]ll putative class members" a new right to opt out received preliminary approval on December 18, 2006.  See Dare, Order on Motion for Approval of Third Final Class Settlement Agreement, Docket No. 02-251, at 3 (D. Me. Dec. 18, 2006).

On January 10, 2007, Tardiff formally notified the class administrator that she opted out of the class.  Pl.'s SMF ¶ 47; Defs.' SMF ¶ 47.  Knox County did not object to Tardiff's request to opt out.  On April 24, 2007, Judge Carter gave final approval to the class action settlement.  Pl.'s SMF ¶ 49; Defs.' SMF ¶ 49.

**(3)**    ***Procedural Posture of this Proceeding***

On February 1, 2007, Tardiff filed this lawsuit under 42 U.S.C. § 1983, solely on her own behalf, against Knox County and Jane Doe.  Although discovery is complete except for privilege-related questions I describe later, Tardiff has not attempted to name an individual corrections officer; the case

---

2006 WL 2827556 (D. Me. Sept. 19, 2006).  What the parties proposed at the time of the September 29 Agreement was a "settlement class," for which there are different standards than a litigating class.  See Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 619–622 (1997).  Arguably that new class required the mandatory notice and opt-out opportunity provided by Rule 23(c)(2), independent of the discretionary "second" opt-out procedure in Rule 23(e).  Since the parties present the issue only as a "second" opt-out under Rule 23(e), however, I will treat it accordingly.

against the defendant "Jane Doe" is therefore **DISMISSED FOR LACK OF PROSECUTION**. Hereafter, I will refer only to the defendant Knox County.

Knox County filed counterclaims (breach of contract and equitable estoppel) and asserted affirmative defenses (waiver, estoppel, and accord and satisfaction) against Tardiff. It asserted that the September 29 Agreement bound Tardiff individually and prevented her from opting out of the class settlement. To support that position, Knox County deposed Tardiff and the lawyers who attended the settlement conference with her. Those depositions generated multiple assertions of attorney-client and work-product privilege. Knox County filed motions to compel responses to specific questions posed to class counsel Robert Stolt and Sumner Lipman, as well as Tardiff, and the Magistrate Judge issued preliminary rulings.

At a conference of counsel before me, the parties agreed to defer completing the problematic depositions and to begin the summary judgment practice, so as to determine whether the privilege issues actually require final resolution. (All other discovery, except for these privilege-related questions, has been completed.) As a result, the parties filed these cross-motions for summary judgment. Along with its statement of material facts, Knox County included facts that it believes would be revealed if I should overrule the privilege assertions, namely, that:

> (1) Attorneys Lipman and Stolt would say that they knew that the Agreement's reference to incorporating the <u>Nilsen</u> agreement meant only <u>Nilsen</u>'s mechanism for distributing the settlement fund, not <u>Nilsen</u>'s new opt-out right, Defs.' SMF ¶¶ 30–31, 67, 69;

(2)    Attorneys Lipman and Stolt would agree that they represented to the court that Tardiff fulfilled all the requirements to serve as the class representative, id., ¶¶ 52–57;

(3)    Attorney Lipman would say that he signed the Agreement on behalf of both the class and Tardiff as an individual, id., ¶¶ 33–34;

(4)    Attorneys Lipman and Stolt would say that the negotiations after September 29, 2006, were solely over nonmaterial terms, id., ¶¶ 41, 68;

(5)    Attorneys Lipman and Stolt would say that they understood that a fundamental part of the Agreement was that Tardiff would receive her damages from the $3 million fund, id., ¶ 80; and

(6)    Attorneys Lipman and Stolt would say that when Tardiff signed the Agreement, she believed that her damages would come from the $3 million fund and that she would not opt out of the class, Defs.' SMF ¶ 71.

For purposes of these motions, I will accept those factual assertions except for the last. The lawyers are not competent to testify to Tardiff's belief. But Tardiff has agreed that such was her belief in any event. Pl.'s Resp. SMF ¶ 71.

Tardiff requests summary judgment on Knox County's counterclaims and affirmative defenses, as well as the merits of her § 1983 claim.

## ANALYSIS

### *(1)    Knox County's Counterclaims and Affirmative Defenses Based on the September 29 Settlement Agreement*

#### *(A)    Is the Class Action Settlement Agreement Binding on Tardiff?*

I assume that, upon its execution on September 29, the Settlement Agreement was binding on the class, subject to the conditions subsequent that Judge Carter would certify the settlement class and approve the settlement terms as Rule 23(e) requires. Although the parties devote substantial argument to that class settlement enforceability issue, I find it necessary to

decide only whether Laurie Tardiff *individually* was bound by the September 29 Agreement.  Knox County contends that Tardiff is bound because of both an express and an implied term that Tardiff individually would not opt out of the Agreement.

When a settlement resolves litigation based on federal rights, interpretation of the settlement agreement is a matter of federal, rather than state, law.  See Quint v. A.E. Staley Mfg. Co., 246 F.3d 11, 14 (1st Cir. 2001); Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999).

The text of the September 29 Agreement says nothing about opting out. Knox County bases its "express material term" argument on the fact that before the Agreement was signed, the class counsel asked Knox County's counsel whether they cared how much of the settlement proceeds Tardiff individually would receive, and Knox County's counsel answered "no."  See Defs.' Opp'n to Pl.'s Mot. for Summ. J. and Defs.' Mot. for Summ. J., at 42 n. 19 (Docket Item 139) ("Defs.' Opp'n").  That exchange does not create an "express term" waiving Tardiff's right to opt out.

Alternatively, Knox County argues that it was an implied term that Tardiff would not opt out of the September 29 Agreement.  See id. at 44–49.

Implied contractual terms that waive rights granted by federal law are disfavored.  See e.g., Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 79–82 (1998) (requiring a waiver of the statutory right to a judicial forum under the Americans with Disabilities Act to be "clear and unmistakable"); Metropolitan Edison Co. v. N.L.R.B., 460 U.S. 693, 708 (1983) ("[w]e will not infer from a general contractual provision that the parties intended to waive a

statutorily protected right unless the undertaking is 'explicitly stated.'  More succinctly, the waiver must be clear and unmistakable"); <u>Communication Workers of America AFL-CIO, Local 1051 v. N.L.R.B.</u>, 644 F.2d 923, 928 (1st Cir. 1981) ("Where a statutory right is involved, the law of this circuit is that 'a waiver should be express, and that a mere inference, no matter how strong, should be insufficient.'") (quoting <u>N.L.R.B. v. Perkins Machine Co.</u>, 326 F.2d 488, 489 (1st Cir. 1964)).

Under federal law, federal class action settlements become effective against class members only through judicial approval.  Fed. R. Civ. P. 23(e).  When approving a class action settlement, a federal judge has discretion to require an additional opportunity for class members to opt-out:

> If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had earlier opportunity to request exclusion but did not do so.

Fed R. Civ. P. 23(e)(4); <u>Nilsen v. York County</u>, 228 F.R.D. 60, 61–62 (D. Me. 2005) (refusing to approve a class action settlement unless it "affords a new opportunity for exclusion").  Rule 23(e)(4)'s opt-out right applies to "individual class members"; it does not distinguish between class representatives and absent class members.  In the class action, Judge Carter insisted upon a new opt-out right as a condition of approving the settlement.[6]  I conclude that

---

[6] A current draft of the Principles of Aggregate Litigation being considered by the American Law Institute endorses a second opt-out where the terms of a settlement agreement are not revealed until after the initial opt-out period has expired.  <u>See</u> ALI, <u>Principles of the Law of Aggregate Litigation</u>, tentative draft, § 3.11 (Apr. 7, 2008).

Tardiff did not clearly waive that right by signing the September 29 Agreement.[7]

Moreover, Tardiff was probably obliged to sign the Agreement on September 29 even if she then had wanted to opt out.  See Parker v. Anderson, 667 F.2d 1204, 1211 (5th Cir. 1982) ("the named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands"); Maywalt v. Parker & Parsley Petroleum Co., 864 F. Supp. 1422, 1430 (S.D.N.Y. 1994); Greenfield v. U.S. Healthcare, Inc., 146 F.R.D. 118, 125 (E.D. Pa. 1993); 2 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 5:23 (2008) ("the class representative must always act for the best interest of the class, even when individual interests might suggest otherwise"); 5 James Wm. Moore et al., Moore's Federal Practice § 23.25[2][a] (2006).  At the time of the Agreement, she was the class representative, a fiduciary for the class.  See Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987) (referring to the "fiduciary role of class representatives").  If the settlement was in the best interest of the class (and the later judicial approval determined that it was), she may have been obliged to sign even if it was not in her individual best interest.  A class representative should be able to fulfill her fiduciary obligation to the class without implicitly waiving any of her individual rights under Fed. R. Civ. P. 23.  That is so whether I focus on Tardiff's signature to the September 29 Agreement, or Attorney Sumner Lipman's signature,

---

[7] I reach this conclusion based upon Rule 23 and independently of the Settlement Agreement's reference to Nilsen.

accepting Knox County's assertion that he would testify that he signed on behalf of Tardiff individually.[8]

Under these circumstances, I will not add to the Agreement an implied term that waives Tardiff's right to exercise the additional opt-out opportunity required by Judge Carter.  It was apparent at the time of the Agreement and thereafter that Tardiff believed that her claim was worth more than a pro rata class share of the $3 million.  Like any other class member, she had the right to opt out and assert her claim individually.  If a defendant wants, as a condition of settlement, a guarantee that a named class representative will not opt out, it must have an explicit agreement to that effect (a provision that can then be subject to judicial scrutiny under the class action rules).[9]

### (B)     Equitable Estoppel

To succeed on its equitable estoppel argument, Knox County must establish that: (1) Tardiff's statements or conduct were misleading and induced it to act; (2) it relied on them to its detriment; and (3) its reliance was reasonable.  See Heckler v. Community Health Servs., 467 U.S. 51, 59 (1984).[10] On reliance, the Supreme Court has stated:

---

[8] I do note that the Advisory Committee Notes to Rule 23 contemplate a strict obligation on class counsel to "represent the interests of the class, as opposed to the potentially conflicting interest of individual class members. . . .  Appointment as class counsel means that the primary obligation of counsel is to the class rather than to any individual members of it. . . . [T]he class representative cannot command class counsel to accept or reject a settlement proposal.  To the contrary, class counsel must determine whether seeking the court's approval of a settlement would be in the best interest of the class as a whole."  Fed. R. Civ. P. 23, advisory committee notes to 1998 Amendments.

[9] For the same reasons, summary judgment is granted to Tardiff on the defendants' affirmative defense based on the "doctrine of waiver."

[10] The parties have not argued that Maine law should apply to the claim of equitable estoppel arising out of the federal-judge-approved settlement of a federal lawsuit. In any event, the elements of equitable estoppel under Maine law are substantially similar to those articulated in *(continued on next page)*

13

> [T]he party claiming the estoppel must have relied on its
> adversary's conduct in such a manner as to change his
> position for the worse, and that reliance must have been
> reasonable in that the party claiming the estoppel did not
> know nor should it have known that its adversary's conduct
> was misleading.
>
> 'The truth concerning these material facts must be
> unknown to the other party claiming the benefit of the
> estoppel, not only at the time of the conduct which
> amounts to a representation or concealment, *but also at the
> time when that conduct is acted upon by him. If, at the time
> when he acted, such party had knowledge of the truth,* or
> had the means by which with reasonable diligence he could
> acquire the knowledge so that it would be negligence on his
> part to remain ignorant by not using those means, *he
> cannot claim to have been misled by relying upon the
> representation or concealment.*'

Id. at 59 & n.10 (quoting 3 J. Pomeroy, Equity Jurisprudence § 810, at 219

(1941)) (emphasis added).

After signing the Agreement late on September 29, 2006, Tardiff made

known by October 6, 2006, that she did not consider herself individually

bound.   That was the end of any misrepresentation or concealment.   Knox

County claims detrimental reliance in that it agreed to pay $3 million but *now*

still faces the individual claims of Tardiff.   See Defs.' Opp'n at 56–57.   The

question under Heckler is what action Knox County took to its detriment *at the

time that it believed* that Tardiff considered herself bound to the settlement.

The answer is, nothing.   Knox County incurred the current lawsuit well after

Knox County learned of any misleading character to any statements or conduct

on Tardiff's part.[11]   Moreover, by October 11, 2006, Judge Carter told the

parties that he would not hold anyone bound by the September 29 Agreement.

---

Heckler.   See Tarason v. Town of South Berwick, 868 A.2d 230, 234 (Me. 2005).

[11] Knox County has not asserted that obtaining the votes of the County and the Risk Pool were detrimental reliance sufficient to enforce the Agreement.

Judge Carter reiterated this view numerous times thereafter, yet Knox County continued to pursue approval of the settlement agreement with knowledge of both Tardiff's position and the Judge's view.  Never did Knox County avail itself of the opportunity to avoid detrimental reliance by walking away from the settlement or re-negotiating its terms after learning of Tardiff's desire to opt out and the Judge's view.  Knox County has shown nothing that qualifies as detrimental reliance as the Supreme Court has defined it.  Equitable estoppel is therefore unavailable.[12]

### (C)   *Accord and Satisfaction*

Knox County has not opposed Tardiff's request for summary judgment on the affirmative defense of accord and satisfaction.  (Obviously, there has been no satisfaction.)

Summary judgment is therefore **GRANTED** to Tardiff on Knox County's counterclaims and affirmative defenses.

---

[12] On its affirmative defenses, Knox County says that it reserves the right to "develop argumentation . . . including, without limitation, the doctrine of judicial estoppel." Defs.' Opp'n at 52 n.24 (citing New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001)). But Tardiff's motion for summary judgment attacked all Knox County's affirmative defenses. It stated: "[t]he affirmative defenses of waiver, estoppel . . . are negated by plaintiff's arguments seeking summary judgment on her own claims and the counterclaim." Pl.'s Mot. for Summ. J. at 12 n.2. Knox County has made no attempt to defend the merits of its estoppel affirmative defense. The mention of "judicial estoppel" and citation to New Hampshire v. Maine provide insufficient guidance to the court on the nature of Knox County's affirmative defense.  That case articulated three considerations for the application of judicial estoppel: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) the party must have succeeded in persuading a court to accept its earlier position; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage . . . ." New Hampshire, 532 U.S. at 750–51; see also Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32–33 (1st Cir. 2004).  I do not see how the facts of this case fit any of those considerations.  I consider the judicial estoppel argument waived.

**(2)     *Tardiff's Request for Summary Judgment Based Upon Judge Carter's Prior Rulings in the Class Action Lawsuit***

On the merits of her § 1983 claim, Tardiff requests summary judgment by issue preclusion or stare decisis because of Judge Carter's liability ruling in the class action lawsuit.  Alternatively she argues that Knox County should be precluded from arguing that the search was based on reasonable suspicion because it did not raise that argument in the class action summary judgment practice.

**(A)     *Issue Preclusion*[13]**

"The preclusive effect of a federal-court judgment is determined by federal common law."  Taylor, 128 S. Ct. at 2171.  Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'"  Id. (quoting New Hampshire, 532 U.S. at 748).

In the class action, Judge Carter granted partial summary judgment (liability only) against Knox County on its policy of conducting strip and visual body cavity searches on all felony arrestees.  He ruled that the policy was unconstitutional as it applied to arrestees charged with non-violent, non-weapon, non-drug-related felonies.  See Tardiff, 397 F. Supp. 2d at 128–131.  Even though Tardiff later opted out of the class, she now wants the benefit of that summary judgment ruling through issue preclusion.

In Premier Electrical Construction Co. v. National Electrical Contractors Association, Judge Easterbrook wrote for the Seventh Circuit that "class

---

[13] The term "issue preclusion" encompasses "the doctrines once known as 'collateral estoppel' and 'direct estoppel'."  Taylor v. Sturgell, 553 U.S. ___, 128 S. Ct. 2161, 2171 (2008).

members who opt out may not claim the benefits of the class's victory."  814 F.2d 358, 367 (7th Cir. 1987).  Premier Electrical's rationale was that allowing class members who opt out to invoke issue preclusion later would undermine the Rule 23 policy of preventing "spurious class actions" and "one-way intervention"[14] and would defeat the goals of judicial economy expressed in Parklane Hosiery by encouraging more opt-outs.[15]  Id. at 361–67; see also Polk v. Montgomery County, 782 F.2d 1196, 1202 (4th Cir. 1986) (noting the ability to join the class action and the effects on judicial efficiency as reasons to deny the benefit of issue preclusion to a plaintiff who opted out of the class action); 7AA Charles A. Wright, et al., Federal Practice and Procedure § 1789, at 562 (2005 & Supp. 2008) ("Wright & Miller") ("[t]he better view is that one who opts

_____

[14] The term "one-way intervention" refers to a potential litigant who decides whether to join an action only after the outcome is discernible.  American Pipe & Const. Co. v. Utah, 414 U.S. 538, 547 (1974).  "One-way intervention" was perceived as unfair because it allowed "members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one."  Id.  A principal goal of the 1966 Amendments to Fed. R. Civ. P. 23 was to limit the availability for one-way intervention by "assur[ing] that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments" through the timing requirement of Rule 23(c)(1) for class certification and the notice and opt-out requirements of Rule 23(c)(2).  See id; Premier Elec., 814 F.2d at 362.

[15] In Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979), the Supreme Court relaxed the traditional mutuality requirement for issue preclusion by recognizing non-mutual, offensive issue preclusion.  After Parklane Hosiery, a plaintiff who was not part of the prior litigation may nevertheless assert issue preclusion against a defendant based on a ruling in that prior litigation rendered against that defendant.  Parklane Hosiery rested principally upon concerns for judicial economy, but recognized that non-mutual, offensive issue preclusion could encourage a "wait and see" approach that would "likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action."  Id. at 330–31.  To control those potential negative effects, the Supreme Court granted trial courts "broad discretion to determine when [non-mutual, offensive issue preclusion] should be applied," and directed that "[t]he general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive [issue preclusion] would be unfair to a defendant, a trial judge should not allow the use of offensive [issue preclusion]."  Id. at 331.

    It is not difficult for a qualifying class member to be part of a class action; usually it is automatic, and opting out requires the affirmative act.  The "general rule" from Parklane Hosiery therefore counsels against allowing those who opt out of a class action to assert issue preclusion.

out of a class action cannot claim [issue preclusion] benefits from the judgment"). I find that analysis persuasive.[16]

Alternatively, Tardiff cannot succeed on issue preclusion because Judge Carter's summary judgment order on liability was not sufficiently final for purposes of issue preclusion. A prerequisite for issue preclusion is that the prior decision was a final judgment. Ashe v. Swenson, 397 U.S. 436, 443 (1970); Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 89–90 (1st Cir. 2007). The definition of "finality" for preclusion purposes varies throughout the circuits and may differ from the "finality" required for an appeal. See 18 Wright & Miller §§ 4432–34. But the First Circuit has said that issue preclusion "normally is not triggered by a nonappealable judgment" under both federal law and Massachusetts law, and cited a case from the Massachusetts Supreme Judicial Court for the principle that "partial summary judgment . . . has no [claim preclusion] effect." See In re Strangie, 192 F.3d 192, 195 & n.6 (1st Cir. 1999); see also Avendale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d 1265, 1270 (5th Cir. 1986) ("partial summary judgment orders lack the finality necessary for preclusion"). Judge Carter granted *partial* summary judgment in the class's favor, but found that issues remained for trial. See Tardiff, 397 F. Supp. 2d 115. (Judge Carter was unable to determine whether Tardiff was

---

[16] A current draft of the Principles of the Law of Aggregate Litigation being considered by the American Law Institute also takes the position that plaintiffs who opt out of a class action should not enjoy the benefits of issue preclusion: "Claimants who exercise their opportunity to avoid the preclusive effect of the aggregate proceedings . . . should not enjoy the benefit of . . . the preclusive effect of the judgment in the aggregate proceeding . . . ." ALI, Principles of the Law of Aggregate Litigation, tentative draft, § 2.08(b) (Apr. 7, 2008). The justification given in the ALI draft derives from the basic principle of class actions that class members who opt out will not be bound by a detrimental judgment, and thus they "should not enjoy the preclusive benefit of any such judgment." See id., § 2.08, comment g.

even a member of the certified class because the actual arrest warrant for Tardiff was not part of the record, see id. at 137). He denied Knox County's request for a certificate of appealability of that order under 28 U.S.C. § 1292(b). See Tardiff, 451 F. Supp. 2d 253 (D. Me. 2006). The parties then settled the case without litigating the remaining issues. Judge Carter's partial summary judgment order, therefore, never became a final, appealable judgment and should not be accorded preclusive effect.

### (B)     *Stare Decisis*

Tardiff's request for summary judgment on some kind of special stare decisis argument is misplaced. Obviously, I will give careful attention to the persuasiveness of Judge Carter's reasoning and the conclusion he reached in his class action partial summary judgment ruling when I apply the law to the facts of Tardiff's case here. But, in this respect, this case is no different from any other.

### (C)     *Waiver*

Tardiff also contends that Knox County should be precluded from arguing in this case that it had individualized reasonable suspicion to search her because, in the class action litigation at the time of summary judgment, Knox County made no such argument. Pl.'s Mot. for Summ. J. at 10–11. Tardiff had the benefit of Knox County's litigation strategy in the class action while she remained part of it and could certainly have pressed her waiver argument there. But she opted out of the class action because she did not like the ultimate (settlement-based) result. She has not provided any persuasive legal ground that would allow her to opt out of an outcome unfavorable to her

19

(in her judgment), yet hold Knox County to all the litigation decisions that it made in the class action that resulted in that outcome.[17]

I conclude that Judge Carter's ruling in the class action lawsuit and Knox County's litigation decisions in that lawsuit do not entitle Tardiff to summary judgment against Knox County.

### CONCLUSION

Accordingly, I **GRANT** summary judgment to Tardiff on Knox County's counterclaims and affirmative defenses.   I **DISMISS AS MOOT** the pending motions to compel; **VACATE AS MOOT** the Magistrate Judge's Memorandum Decision on Defendants' Motion to Compel; and **DISMISS** the parties' objections to that decision.

I **DISMISS FOR LACK OF PROSECUTION** the case against "Jane Doe."

I **DENY** Tardiff's request for summary judgment on Knox County's liability, so far as her arguments are premised on what happened in the class action lawsuit.   I shall rule on the parties' merits-based cross-motions for summary judgment concerning Knox County's liability in a separate opinion (Part II).

---

[17] Tardiff states:  "It is well settled in this Circuit that legal theories not squarely raised in a prior proceeding are waived in subsequent related cases."  Pl.'s Mot. for Summ. J. at 11.  The cases cited by Tardiff for that proposition discuss the principles that arguments not raised in the lower court will not be entertained on appeal, Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992), and arguments available, but not raised, in a first appeal will not be considered in subsequent appeals, Stewart v. Dutra Constr. Co., 418 F.3d 32, 35–36 (1st Cir. 2005); United States v. Sacko, 247 F.3d 21, 24 (1st Cir. 2001).  These are principles of appellate proceedings.  Tardiff does not explain how those principles apply to separate lawsuits at the district court level. Indeed, the First Circuit noted that an argument not raised on summary judgment could be raised subsequently even in the same district court proceedings.  See Stewart, 418 F.3d at 36 n.1.

SO ORDERED.

DATED THIS 29TH DAY OF JULY, 2008

/S/D. BROCK HORNBY
D. BROCK HORNBY
UNITED STATES DISTRICT JUDGE