UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LAURIE TARDIFF, )<br>)<br>  PLAINTIFF )<br>)<br>v. )<br>)<br>KNOX COUNTY, )<br>)<br>  DEFENDANT ) | CIVIL NO. 07-10-P-H |

ORDER ON MOTION IN LIMINE

I have previously granted the plaintiff's motion for summary judgment on liability under 42 U.S.C. § 1983 for a strip search she underwent at the Knox County Jail in 2001. The matter is scheduled for a trial on damages this month. The defendant now has moved in limine to exclude the plaintiff's evidence of lost income or profits allegedly caused by her mental distress growing out of the strip search. The motion is **GRANTED IN PART** and **DENIED IN PART**.

PROCEDURAL STATUS

The plaintiff argues that this is an improper summary judgment motion (out of time and not in compliance with Fed. R. Civ. P. 56 and Local Rule 56) and should not be entertained. Pl.'s Mem. of Law in Opp. to Def.'s Mot. in Limine at 1 (Docket Item No. 177). I disagree. It is a motion to exclude evidence and is properly considered as a motion in limine, just as I could

consider an evidentiary objection presented orally at trial, or entertain a motion to strike testimony because it did not meet the evidentiary standards.

The defendant argues that I should exclude the evidence because the plaintiff did not disclose her lost income/lost profits claim as required by Rule 26 in her initial disclosures. See Fed. R. Civ. P. 26(a)(1)(A)(iii) ("a party must, without awaiting a discovery request, provide the other parties, . . . a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or evidentiary materials, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered"). Def.'s Mot. in Limine 12-13 (Docket Item No. 167). The defendant claims that its "ability to investigate" the plaintiff's economic loss has been prejudiced. Id. at 13.

In her Complaint, the plaintiff did not allege any economic injury. She claimed "assault, battery, intentional infliction of emotional distress, negligent infliction of emotional distress, mental anguish, embarrassment, invasion of privacy, violation of constitutional rights, and depravation [sic] of constitutional rights." Compl. ¶ 41 (Docket Item No. 1). Then in her Rule 26(a)(1)(A)(iii) initial disclosure, she did not disclose any economic injury. Pl.'s Initial Disclosures (Docket Item No. 167-2). Tardiff first disclosed her claim for economic damages in her Answers to Defendant's Interrogatory No. 15 dated July 31, 2007. Pl.'s Answers to Interr. Propounded By Def. Knox Cty. (Docket Item No. 105-3). Then during a break in her deposition, Tardiff wrote notes on her interrogatory answers that, she claimed in the afternoon session were the more details for

the basis for her economic loss claim. Thereafter, she amended her interrogatory answers to include the handwritten information she had produced during her deposition. Pl.'s Second Supplemental Answers to Interr. Propounded by Def. (Docket Item No. 177-2).

Although Tardiff did not supply the economic loss information in her initial disclosures, she did provide the required information three months later in answers to interrogatories. This disclosure came one month before the Plaintiff was deposed and eighteen months before the case will be tried. The defendant cannot reasonably claim to have suffered any prejudice in its preparation for trial; instead it complains that such delayed disclosure has prejudiced its ability to investigate those claims. Any handicap in the defendant's ability to investigate seems to be the result of the plaintiff's failure to maintain any documentary evidence (contracts, grant proposal, business financial statements, tax returns, etc.) to support her claim of economic loss, rather than a delay in the disclosure. Thus, I **DENY** the defendant's motion to exclude the economic loss evidence on the basis that the tardy disclosure did not prejudice the defendant's ability to investigate.

## APPLICABLE LAW

The Supreme Court and the First Circuit are clear that federal common law controls damages premised on § 1983 liability. <u>Carey v. Piphus</u>, 435 U.S. 247, 257-59 (1978); <u>Figueroa-Rodriguez v. Aquino</u>, 863 F.2d 1037, 1045 (1st Cir. 1988); <u>Furtado v. Bishop</u>, 604 F.2d 80, 97 (1st Cir. 1979). Both parties here, however, have cited only Maine common law cases. Because there is no

suggestion that the Maine cases differ from what federal common law establishes, I too use the Maine cases.

## ANALYSIS

The plaintiff's economic loss claim is based on the following. She had a business relationship with the State of Maine Department of Health and Human Services. She provided residential placement services to handicapped clients and received grant funding from the State to do so. She operated her business through two companies, one a Subchapter S corporation (Oceanway Manor) and the other a sole proprietorship (later incorporated after the period in question). She claims that emotional distress caused by the strip search prevented her from completing five existing contracts she had, and that she lost the opportunity for a large future contract. The defendant claims that the plaintiff's evidence of economic loss is insufficient to go to the jury.

On the motion in limine, the parties have presented me the plaintiff's deposition (Docket Item No. 43); the deposition of Alan Letourneau (Docket Item No. 166), who was a case manager for mental health for the State Department of Health and Human Services during part of the relevant times; the notes the plaintiff wrote during her deposition lunch break (Docket Item No. 105-3); her Second Supplemental Answer to Defendant's Interrogatory No. 15 (Docket Item No. 177-2); and a new Affidavit that she attaches to her Memorandum (Docket Item No. 177-3).

### A. *The Lost New Contract Opportunity*

Letourneau testified that the Department of Health and Human Services liked to use the plaintiff's services, Letourneau Dep. at 52-53, and that he had

4

contacted her about a particularly difficult mental health placement, id. at 35, 38, 50-51. The State wanted to move a resident, hereinafter referred to as WW, from Augusta Mental Health Institute ("AMHI") into community placement. Id. at 37. Apparently the State placed this client temporarily with the plaintiff, but that placement failed and the State brought him back to AMHI. Id. at 35, 37-38. The State expected him to be difficult to place permanently. Id. at 39-40. Letourneau also testified that the State wanted the plaintiff to obtain a Medicaid mental health license (Oceanway Manor had a Medicaid license, but not one for mental health services) so as to make funding easier (federal rather than state funds). Id. at 41. By the time Letourneau left his State position for other employment in 2002, the State had not been able to place the client with the plaintiff and Letourneau did not know why. Id. at 36-37. The plaintiff never did complete her Medicaid mental health license application. Affidavit of Laurie Tardiff ¶ 4. She says that her emotional distress prevented her from doing so, and that she would have obtained the Medicaid mental health license or that in the alternative the State would have found other funding and entered the contract with her regardless.

    I conclude that the plaintiff is not competent to testify whether she would have received the Medicaid mental health license. I also conclude that the plaintiff is not competent to testify that the State would have awarded her the contract in question even if she had not obtained the Medicaid license, since that would have required State funds in a substantial amount.

    As to the value of the contract, the plaintiff offers only her recollection of the gross amount in her proposal to the State, namely, $260,000. To come up

with economic loss on the contract, she also says that her profit margins typically were 8% to 15% and gives her recollection of the salary she paid herself, $25,000. She has not presented the proposal/contract, nor past years' tax returns, nor any documentation at all. She asserts that the contract would have continued up until the present, but has no foundation for saying so except that she has been successful with clients in the past, Pl.'s Mem. of Law in Opp. To Def.'s Mot. In Limine at 9-10; Tardiff Aff. ¶ 3. However, there is no evidence that Tardiff ever had a client with similar needs to that of WW or that she had been successful in maintaining the community placement for a similarly difficult client.

The Maine common law is clear: "Prospective profits are recoverable as damages only if the profits can be estimated with reasonable certainty." Eckenrode v. Heritage Mgt. Corp., 480 A.2d 759, 765 (Me. 1984).[1] Regarding evidence to support that standard, the Law Court has stated:

> Although opinion evidence regarding lost profits is admissible, it must be an informed opinion *based on facts that the fact-finder can evaluate*. Thus, we have held insufficient a business owner's unsupported assertion that his injury led to $20,000 in lost profits. Similarly, we held that a golf professional's testimony regarding the amount of profits he lost in one year was insufficient even though it was supported by the previous year's tax return because it did not address the volume of business during the actual year in dispute.

---

[1] A plaintiff's own opinion as to the increased profits he would have reaped had he operated the shop for the entire period of his contract, based merely on one year's past performance of the shop and on changes that would result under the contract as to plaintiff's expenses and profit retention, was not an informed opinion based on relevant facts in evidence upon which the jury could rely in assessing damages for claimed lost profits.

Eckenrode, 480 A.2d at 766.

Rutland v. Mullen, 798 A.2d 1104, 1112-13 (Me. 2002) (emphasis added) (citations omitted).[2]

I conclude that the testimony presented on this issue does not satisfy the standard of "facts that the fact-finder can evaluate." Id. Instead, the jury would have to speculate in order to determine whether the plaintiff suffered economic loss on this contract and, if so, how much. Specifically the jury could answer the following questions only by speculating:

1.  Would she actually have obtained the Medicaid mental health license if she had completed the application?[3]

2.  Would she have obtained the contract from Health and Human Services without the Medicaid mental health license?[4]

---

[2] More recently the Maine Law Court has identified a 5-part test to recover for loss of an earning opportunity:
> (1) the opportunity was real and not merely a hoped-for prospect; (2) the opportunity was available not just to the public in general but to the plaintiff specifically; (3) the plaintiff was positioned to take advantage of the opportunity; (4) the income from the opportunity was measurable and demonstrable; and (5) the wrongdoer's negligence was a proximate cause of the plaintiff's inability to pursue the opportunity.

Snow v. Villacci, 754 A.2d 360, 365 (Me. 2000). The plaintiff here does not meet the fourth criterion, and the Court emphasized the importance of trial courts exercising discretion to "exclude[] evidence that is nothing more than hope or speculation." Id.

[3] There is nothing in the record about the Medicaid mental health licensure process or standards. Moreover, Tardiff does not assert that she knew what was required to obtain such a license or that she believed that she was indeed able to obtain the needed license. Her brief on the motion simply states that "one reason [she] did not get a Medicaid mental health license was that she was mentally and emotionally incapable of finishing the application as a result of the strip search." Pl.'s Memo. In Opp. To Def.'s Mot. In Limine at 8.

The plaintiff relies principally on the testimony of Alan Letourneau, a Mental Health Team Leader for the State of Maine, who worked with mental health service providers including Tardiff when making placement decisions for clients. Letourneau Dep. at 12-3. Letourneau testified that if Tardiff had submitted an application, it would have been approved because "it's more pro forma . . . they get the application and if the application is complete, then it would be approved." Id. at 58-60, 62. I do not find that on the record before me, Letourneau is qualified to testify about the standard for issuing a Medicaid mental health license. There is no evidence as to what state agency issues the Medicaid licenses or that he had the opportunity to observe the licensure process.

7

3.     If she obtained the contract, when would the contract have started?[5]

4.     Would it have been in the amount she wrote into her contract proposal?[6]

5.     How long would the placement of this client last?[7]

6.     How intermittent would the placement (and the payments) be?[8]

The evidence here simply does not permit a jury to find these facts to a reasonable certainty or probability as required.[9]  Therefore, I **GRANT** the defendant's motion to exclude evidence of economic loss based upon the lost future contract.

---

[4] Tardiff testified that her contract to provide services for WW had been approved but not awarded to her. Tardiff Dep. at 147. However, she was unable to provide any documentation including a copy of her proposed contract. Id. at 148. The State had a preference for using providers that had Medicaid mental health licenses and had encouraged Tardiff to obtain that license. Letourneau Dep. at 41, 35-6, 52, 55. The WW contract was sizeable – $260,000 annually. Although there is some testimony in the record that Tardiff had previously obtained "wraparound" or grant funds, where Medicaid funds were unavailable because she did not have a Medicaid mental health license, the State's preference for using Medicaid funds coupled with the considerable yearly cost of this contract makes it uncertain that Tardiff would have been awarded the contract.

[5] Letourneau testified that WW was placed with Tardiff or Oceanview for a short time but that the placement failed and he returned to AMHI. Letourneau Dep. at 37-8, 48-9. When Letourneau left his position in 2002, the State of Maine was still attempting to place WW in a community-based facility. Id. at 12, 39.

[6] Letourneau testified that he did not know if Tardiff ever submitted an application for a contract with WW. Letourneau Dep. at 41. Moreover, as stated in footnote 4, Tardiff was unable to provide any documentation with respect to the WW contract.

[7] As discussed in footnote 5, WW's first placement with Tardiff failed and he returned to AMHI.

[8] The record indicates that WW would be a difficult placement and, thus, it is a matter of speculation how long the placement with Tardiff would last.

[9] In addition to the evidence I have already noted was missing, other helpful evidence that might have permitted the fact-finder to evaluate the plaintiff's claim of loss on this contract includes whether the State ever did award a contract to place this client; if so, for what amount; for how long; how successful was the placement; what profit margins did the State allow; was it Medicaid funding; etc.

**B. Existing Contracts**[10]

The plaintiff says that she had to terminate existing contracts with "BM, C, DA, DR, and KL" because of her emotional distress. She claims lost income as a result.

### (1) BM and C

The defendant's challenge to the economic loss on these two clients is really one of credibility, because the claimed losses are based solely upon the plaintiff's memory of hours she worked on the contracts, the rate she billed, and the profit margin range. Although the plaintiff has not provided the actual contracts nor any documentation to support her claims, her testimony raises credibility, not admissibility, questions for the jury, given that these contracts were already in existence. When confronted with a similar challenge the Law Court stated:

> Although [the defendant] challenges the lack of precision and detail in [the plaintiff's principal's] explanation of the profits-per-pound figure . . ., "the jury is entitled to act upon probable and inferential . . . proof in determining damages," and may base an award of damages on a judgmental approximation, "provided the evidence establishes facts from which the amount of damages may be determined to a probability."

Tang of the Sea, Inc. v. Bayley's Quality Seafoods, Inc., 721 A.2d 648, 650 (Me. 1998) (quoting Currier v. Cyr, 570 A.2d 1205, 1210 (Me. 1990)). The motion is **DENIED** with respect to BM and C.

---

[10] The defendant also moves to exclude any evidence of a potential contract Tardiff claimed in her deposition to have lost in 2007 because Knox County Jail would not permit the prospective client to visit her facility. Tardiff Dep. at 313-14. This potential contract is not mentioned in any of Tardiff's interrogatory answers about economic loss. The plaintiff failed to respond to this argument and, thus, she has waived any opposition to my exclusion of such evidence at trial. See, e.g., Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995); Shapiro v. Haenn, 222 F. Supp.2d 29, 44 (D. Me. 2002).

### (2) DA

The plaintiff claims that she lost ten months on this contract. Tardiff Dep. at 305-06. The motion is **DENIED** with respect to DA.

### (3) DR

The plaintiff asserts that she lost eleven months on this contract. Tardiff Dep. at 321-22. The defendant responds that the plaintiff had to stop providing services to this client when he was incarcerated for approximately four to six of the eleven months. My review of the record indicates that the claim for eleven months of lost profit must include the time when DR was incarcerated. It seems, however, that the plaintiff is claiming that she could have continued to provide some services to DR while he was in jail if Knox County had "allowed [her] to see him." Tardiff Dep. at 322. It is a jury question whether the plaintiff could have continued to serve DR while he was incarcerated. Thus, The motion is **DENIED** with respect to DR.

### (4) KL

The plaintiff testified that this client obtained a job and that she no longer needed to provide services to him. Tardiff Dep. at 307. She may make the claim for the four months before he obtained a job. With respect to KL, the motion is **DENIED**.

### CONCLUSION

Accordingly, the defendant's Motion in Limine is **GRANTED** with respect to evidence on the potential contract for WW and the potential contract for a Knox

10

County Jail inmate in 2007 and **DENIED** with respect to evidence of economic damages for existing contracts with BM, C, DA, DR, and KL.

    **SO ORDERED.**

    **DATED THIS 5TH DAY OF FEBRUARY, 2009**

                                         D. BROCK HORNBY
                                         **D. BROCK HORNBY**
                                         **UNITED STATES DISTRICT JUDGE**